# EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

THE HAGAN LAW FIRM, INC.,

        Plaintiff,

  -vs-                       Case No. CIV 464141

WIRELESS NETWORKS, INC.,

        Defendant.

_____/

**CERTIFIED COPY**

DEPOSITION OF CHARLES BROWN

Friday, July 6, 2007

Pages 1 to 37

Reported By: D. Kathrine Hall, RPR, CSR No. 11426



GROSSMAN & COTTER
CERTIFIED COURT REPORTERS
Comp-U-Scripts    Weber & Volzing

*Mailing Address:*

117 S. California Avenue, #D-201 • Palo Alto, CA 94306    465 California Street • San Francisco, CA 94104
Phone 650.324.1181  Fax 650.324.4609    Phone 415.395.9330  Fax 415.395.9254

```
 1                   A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFF:
 4           THE HAGAN LAW FIRM
 5           BY:  JAMES R. HAGAN, ATTY. AT LAW
 6           350 Cambridge Avenue, Suite 150
 7           Palo Alto, California 94306
 8           (650) 322-8498
 9
10   THE WITNESS:
11           CHARLES BROWN
12           President, Wireless Networks, Inc.
13           55 Skylonda Drive
14           Woodside, California 94062
15
16
17
18
19
20
21
22
23
24
25
```

2

CHARLES BROWN

```
 1  be if it were sold at, say, an auction or in some other
 2  way that would seek the fair market value thereof?
 3      A.   Well, they're specialized products.  I would --
 4  minimal.  It would be electronic surplus.  If they were to
 5  sell by the pound --
 6      Q.   I see.  About how much per pound?
 7           A few cents?
 8      A.   Yes.
 9      Q.   Is the source code valuable to WNI?
10      A.   No.
11      Q.   Has WNI invested a lot of money in the source
12  code?
13      A.   Well, yes.
14      Q.   About how much money was invested in the source
15  code, to create the source code?
16      A.   Millions of dollars.
17      Q.   Is the source code valuable to WNB?
18      A.   Yes.
19      Q.   If the source code were to be put on the market
20  for sale, do you have any idea who the potential buyers
21  might be?
22      A.   No.
23      Q.   Would WNB be a potential buyer?
24      A.   Yes.
25      Q.   Would the source code be of substantial value to
```

17

CHARLES BROWN

1  WNB?

2  A.  Yes.

3  Q.  Would it be possible for WNB to duplicate the
4  source code if it did not have access to the original
5  source code?

6  A.  No.

7  Q.  Mr. Brown, during the period of time that you
8  have been president of WNB -- pardon me -- that you have
9  been president of Wireless Networks, Inc., have you been
10 in charge of the company's retention of legal help?

11 A.  Yes.

12 Q.  And has the Hagan Law Firm or did the Hagan Law
13 Firm represent Wireless Networks, Inc., for several years?

14 A.  Yes.

15 Q.  Did Wireless Networks, Inc., enter into an
16 agreement with the Hagan Law Firm to pay the Hagan Law
17 Firm at standard billing rates for Hagan Law Firm legal
18 services?

19 A.  Yes.

20 Q.  Have you got a document with you today that
21 purports to list parties to whom Wireless Networks, Inc.,
22 owes money?

23 A.  Yes.

24 Q.  Can I see that document, please?

25 A.  Yes.

18

CHARLES BROWN

1  billings that Hagan Law Firm sent to Wireless Networks,
2  Inc., from time to time over the last four years?
3      A.   Could you repeat that?
4      Q.   How did you calculate the amount of money that
5  you put on this list as being owed to the Hagan Law Firm?
6      A.   Well, it was taken from the books and records of
7  WNI, which simply reflected the billing statements of the
8  Hagan Law Firm and the payments made against that account.
9      Q.   Is there any reason of which you are aware why
10 the billings of the Hagan Law Firm should not be paid?
11     A.   No. I think they should be paid.
12     Q.   Is there any reason that you're aware of why the
13 salary that's owed to you and the other employees should
14 not be paid?
15     A.   No. I think those should be paid as well.
16     Q.   Is there any reason of which you are aware which
17 would justify the nonpayment of the notes that are payable
18 to you?
19     A.   No.
20     Q.   So far as you are aware, does Wireless Networks,
21 Inc., have any legal defense which would justify the
22 nonpayment of the notice payable to you?
23     A.   No.
24     Q.   Are you aware of any legal defense of
25 Wireless Networks, Inc., which would justify the

24

1  nonpayment of the accrued salaries to you and the other
2  employee?
3      A.   No.
4      Q.   Are you aware of any legal defense that
5  Wireless Networks, Inc., has that would justify the
6  nonpayment of the bills to the Hagan Law Firm?
7      A.   No.
8      Q.   Who is the other employee to whom $5,000 is owed?
9      A.   Joao Araujo.
10     Q.   Where is he located?
11     A.   He's in Boca Raton, Florida.
12     Q.   Is there any reason that you are aware of why he
13 should not be paid the amount that's owed to him by
14 Wireless Networks, Inc.?
15     A.   No.
16     Q.   The next item on this list is "Crew Software"
17 listed for $2,000.  What is that for?
18     A.   It's for servers, e-mail services, web services.
19 Basic data communication services provided to the company
20 on a monthly basis.
21     Q.   Are you aware of any reason for a legal defense
22 that would justify the nonpayment of that billing to
23 Crew Software?
24     A.   No.
25     Q.   The next line item here is "Cedric Berger," for

CHARLES BROWN

1  A.  Yes.

2  Q.  When did you receive that?

3  A.  A couple days ago.

4  MR. HAGAN: It's 2:00 o'clock. Why don't we take

5  a few minutes off the record.

6  (Recess taken from 2:03 to 2:11 p.m.)

7  MR. HAGAN: This is a copy to be marked next in

8  order, which is the Notice of Special Meeting of

9  Stockholders.

10  (Plaintiff's Exhibit No. 11 was marked for

11  identification.)

12  BY MR. HAGAN:

13  Q.  Are you familiar with the contents of that

14  document, Mr. Brown?

15  A.  Yes.

16  Q.  It appears that the largest shareholder has

17  called this meeting in order to elect three directors --

18  three new directors of Wireless Networks, Inc. Is that

19  correct?

20  A.  Yes.

21  Q.  And you are not to be one of those directors; is

22  that correct?

23  A.  Yes.

24  Q.  Do you have any understanding of whether or not

25  you will continue to be president of Wireless Networks,

29

Comp-U-Scripts / GROSSMAN & COTTER / Weber & Volzing

```
 1   Inc., after that meeting occurs?
 2       A.   No.
 3       Q.   Do you think it's possible, Mr. Brown, that you
 4   might be removed as president?
 5       A.   Yes.
 6       Q.   Where is the source code now located, Mr. Brown?
 7       A.   It's in a safety deposit box at Wells Fargo Bank
 8   in Woodside, California.
 9       Q.   Is that source code capable of being delivered to
10   some other party or person easily?
11            In other words, can you go to the safety deposit
12   box and get it and hand it to another party or deliver it
13   to another party?
14       A.   Yes.
15       Q.   Doesn't weigh very much, does it?
16       A.   No.
17       Q.   Not very big?
18       A.   No.
19       Q.   At the present time, the source code is under
20   your control as the president of Wireless Networks, Inc.
21   Is that correct?
22       A.   Yes.
23       Q.   And it's in the possession of the bank.  And so
24   far it's in the lockbox, but it's actually in the
25   possession of Wireless Networks, Inc.; is that correct?
```

30

```
 1  know the facts and the circumstances?
 2       A.   Yes.
 3            MR. HAGAN:  Okay.  Then I think we're finished.
 4            (Whereupon, the July 6, 2007 deposition testimony
 5  of CHARLES BROWN was concluded at 2:29 p.m.)
 6
 7
 8                               _____
 9                               CHARLES BROWN
10
```

36

```
 1        I, D. KATHRINE HALL, duly authorized to
 2   administer oaths pursuant to Section 2093(b) of the
 3   California Code of Civil Procedure, do hereby certify:
 4   That the witness in the foregoing deposition was by me
 5   duly sworn to testify the truth in the within-entitled
 6   cause; that said deposition was taken at the time and
 7   place therein cited; that the testimony of the said
 8   witness was reported by me and was hereafter transcribed
 9   under my direction into typewriting; that the foregoing is
10   a complete and accurate record of said testimony; and that
11   the witness was given an opportunity to read and correct
12   said deposition and to subscribe the same.
13        Should the signature of the witness not be
14   affixed to the deposition, the witness shall not have
15   availed himself or herself or the opportunity to sign or
16   the signature has been waived.
17        I further certify that I am not of counsel, nor
18   attorney for any of the parties in the foregoing
19   deposition and caption named, nor in any way interested in
20   the outcome of the cause named in said caption.
21        DATED:  July 18, 2007
22
23   _____
     D. KATHRINE HALL
24   RPR, CSR NO. 11426
25
```

37