DANIEL J. HERLING (SBN 103711)
LINA M. BRENNER (SBN 191075)
JESSICA E. LA LONDE (SBN 235744)
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail:   djherling@duanemorris.com
          lmbrenner@duanemorris.com
          jelalonde@duanemorris.com

Attorneys for Defendant
WIRELESS NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES M. BROWN, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>WIRELESS NETWORKS, INC., a Delaware corporation,<br><br>    Defendant. | Case No. 3:07-CV-04301 EDL<br><br>**OPPOSITION OF DEFENDANT WIRELESS NETWORKS, INC. TO PLAINTIFF'S *EX PARTE* APPLICATION FOR RIGHT TO ATTACH ORDER**<br><br>Date:    August 31, 2007<br>Time:    10:00 a.m.<br>Dept:    Courtroom E, 15th Floor<br><br>Judge:   Magistrate Elizabeth D. Laporte |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. FACTS ..................................................................................................................................2

    A. Background ..................................................................................................................2

    B. Procedural History ........................................................................................................2

III. ARGUMENT ........................................................................................................................3

    A. Plaintiff Already Tried and Failed to Obtain a Writ in This Case ................................3

    B. Plaintiff Fails to Meet the Standards for Attachment to Issue .....................................3

        1. *First Prong*: The Claim Upon Which the Attachment is Based is Not One Upon Which An Attachment May Be Issued .................................4

        2. *Second Prong*: Plaintiff Cannot Establish the Probable Validity of the Claim Upon Which the Attachment Would Be Based .............................5

            a. Enforceability of Promissory Notes Seriously in Dispute ...................5

            b. Promissory Note Has a Statute of Limitations Issue On its Face ........6

            c. Plaintiff's Wage Claims Are Not Viable .............................................6

        3. *Third Prong*: On Information and Belief, the Attachment is Being Sought For Purposes Other Than the Recovery Upon the Claim Upon Which the Attachment is Based, To Wit, to Harass and Intentionally Harm WNI, and Further Plaintiff's Self-Dealing Efforts ..............................7

    C. The Attachment Would Have a Serious Detrimental Effect on WNI's Business......10

    D. Attachment in the *Hagan* Matter Was Obtained Through Collusion and/or Fraud ............................................................................................................................11

IV. CONCLUSION...................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**
*Nakasone v. Randall*
  (1982) 129 Cal.App.3d 757 ............................................................................................................. 3
*North Hollywood Marble Co., Inc. v. Superior Court*
  (1984) 157 Cal.App.3d 683 ........................................................................................................... 10

**Statutes**
California Code of Civil Procedure section 337 ................................................................................. 6
California Code of Civil Procedure section 481.190 .......................................................................... 5
California Code of Civil Procedure section 483.010 ..................................................................... 1, 4
California Code of Civil Procedure section 484.090 .......................................................................... 3
California Code of Civil Procedure section 485.220 ................................................................. passim
California Code of Civil Procedure section 572 ............................................................................... 12

Defendant Wireless Networks, Inc. ("WNI") respectfully submits this Opposition to Plaintiff's *Ex Parte* Application for Right to Attach Order ("Application").

## I.   INTRODUCTION

Plaintiff Charles M. Brown ("Plaintiff") already sought and was denied by the San Mateo Superior Court an Application for Right to Attach the same property (WNI's Source Code) he seeks to attach in this Application – under the same standards and identical facts. Nothing has changed and no facts have developed in the several days since Plaintiff submitted and was denied his previous application. Plaintiff's characterization that the previous judge denied his application "without prejudice or explanation" ignores the fact that the court called Plaintiff's application "extortion."

Plaintiff is *still* not entitled to the issuance of a right to attach order as a matter of law, because (1) he cannot establish the requirements for a writ to issue (set forth in California Code of Civil Procedure ("Code Civ. Proc.") §§ 483.010 and 485.220); and (2) the issuance of a writ would cause severe and irreparable harm to WNI. Plaintiff's declaration in support of his Application is fraught with mischaracterizations and misstatements of fact, and contains numerous instances of speculation and hearsay.

Any attempt to "bootstrap" the San Mateo Superior Court's writ application determination in *The Hagan Law Firm v. WNI* matter to this case must be rejected in its entirety. The attachment of the Source Code in the *Hagan* matter was based on a very different set of circumstances than those that exist here. The enforceability of the promissory notes and the viability of the wage claims upon which Plaintiff is suing in this case are hotly contested issues. The alleged "ratification" of the promissory notes was procured by Plaintiff through misstatements and/or fraud. (Declaration of Ruy Rothschild de Souza ("De Souza Declaration ¶ 5.) Given that the promissory notes were signed by Plaintiff himself, and were "ratified" under false pretenses, their enforceability is highly questionable. In addition, Plaintiff's wage claims are not viable. For example, the wage claim covering the year 2002 violates the applicable statute of limitations on its face.

In addition, WNI had no notice of the writ application in the *Hagan* matter and had no opportunity to oppose that application, because notice was only provided to Plaintiff. Therefore, the

fact that attachment was granted in the *Hagan* matter is irrelevant in the instant matter, given the very different set of circumstances here. These facts, coupled with Plaintiff's self-dealing behavior in his capacity as an officer and director of WNI, makes Plaintiff's lawsuit questionable and makes attachment here inappropriate.

There is no valid legal or equitable basis for a right to attach order as to the WNI property sought by Plaintiff, and Plaintiff's Application should be denied.

## II.   FACTS

### A.   Background

Plaintiff Charles Brown is a former officer and director of Defendant WNI. Plaintiff was removed as an officer and director of WNI on or about July 13, 2007. Plaintiff filed a complaint against WNI on July 19, 2007 for breach of contract and common counts, alleging that WNI owed him certain sums, some of which Plaintiff claims is evidenced by two separate promissory notes, executed on June 30, 2001 and January 30, 2003, and payable on June 30, 2003 and January 30, 2005, respectively. (*See* Plaintiff's Complaint, and Exhibit A thereto.) These promissory notes were signed by Plaintiff himself, in his capacity as President and Secretary of Defendant WNI. (*See* Exhibit A to Plaintiff's Complaint.)

In this (and his previous) Application, Plaintiff seeks to attach certain source code belonging to WNI, consisting of three DVD computer disks used to conduct WNI's business ("Source Code").

Other relevant facts are discussed, as appropriate, in the Argument section below.

### B.   Procedural History

Plaintiff filed an *ex parte* application for writ of attachment on August 20, 2007 in the San Mateo Superior Court, regarding the same Source Code Plaintiff seeks to attach in this most recent motion. WNI filed an Opposition to the August 20 application. After a hearing on the matter, which both parties' counsel, as well as Plaintiff himself, attended, Honorable Marie S. Weiner denied Plaintiff's application.

On August 20, WNI's counsel was served with an amended complaint, which attempts to add causes of action for Plaintiff's wage claims. On August 21, WNI received notice that Plaintiff was again going into court *ex parte* to seek a writ of attachment with respect to the Source Code (this

time in front of a different judge of the San Mateo Superior Court). However, in the interim, WNI filed its Notice of Removal, based on diversity jurisdiction, which precluded that hearing from taking place.

Removal was effective on August 21. On August 22, Plaintiff's counsel notified WNI's counsel that he would be filing an *ex parte* application for a right to attach order with this Court.

### III.    ARGUMENT

#### A.    Plaintiff Already Tried and Failed to Obtain a Writ in This Case

On Monday, August 20, 2007, Plaintiff applied for a writ in the San Mateo Superior Court. WNI filed an opposition to Plaintiff's application and counsel for both parties, as well as Plaintiff himself, attended the hearing. The Honorable Marie S. Weiner denied Plaintiff's application. While Plaintiff characterizes the writ as being denied "without prejudice or explanation," he ignores the fact that the court characterized Plaintiff's writ as "extortion."

Nothing has changed in the several days since Plaintiff applied for a writ and was denied. Therefore, there is nothing justifying a different outcome now.

#### B.    Plaintiff Fails to Meet the Standards for Attachment to Issue

Plaintiff's Application *still* fails on each of the following requirements to obtain a right to attach and writ of attachment order:

> (1)    The claim upon which the attachment is based is one upon which an attachment may be issued.
>
> (2)    The plaintiff has established the probable validity of the claim upon which the attachment is based.
>
> (3)    The attachment is not sought for a purpose other than the recovery upon the claim upon which the attachment is based.

(*See* Code Civ. Proc., § 485.220, listing the requirements (Code Civ. Proc., § 484.090, for noticed hearings, contains the same requirements.)) These statutory requirements are to be strictly construed. (*See, e.g.*, *Nakasone v. Randall* (1982) 129 Cal.App.3d 757, 761.)

///

///

///

### 1. *First Prong*: The Claim Upon Which the Attachment is Based is Not One Upon Which An Attachment May Be Issued

To be subject to attachment under the first prong of Code of Civil Procedure section 485.220, Plaintiff must show that there is a "fixed or readily ascertainable amount" as to which a writ may issue. (Code Civ. Proc., § 483.010(a).)

**Not fixed or readily ascertainable.** There is a significant factual dispute as to the amounts WNI allegedly owes to Plaintiff and, therefore, a writ is inappropriate here. For one, the amounts claimed in the promissory notes differ from the amounts claimed in the complaint, and WNI has been unable to verify the truth or accuracy of Plaintiff's determinations regarding what he has already been paid and what he alleges WNI owes. Plaintiff relies on various tables which he alleges demonstrates the amounts WNI has previously paid Plaintiff, but these tables are not authenticated. Moreover, Plaintiff, up until his removal as officer, on or about July 13, 2007, had sole control of these records, and because these records were not timely released to WNI, WNI cannot confirm the accuracy of same.

WNI only recently has gained access to the corporate records that might verify the amounts paid by WNI. WNI's corporate records were being held in a storage unit under Plaintiff's name until very recently. Plaintiff continually stalled in providing WNI access to these records, precluding WNI from reviewing such records. After repeated attempts, it was not until August 14 that Plaintiff sent to WNI's counsel the key to the storage unit where such records are being held. WNI has not had the opportunity to fully review those corporate documents, especially in light of its needing to continually fight Plaintiff's effort to attach its Source Code. Therefore, these amounts are not fixed or readily ascertainable.

**Offset Likely Applies.** Moreover, the amount allegedly owed to Plaintiff is not fixed or readily ascertainable because an offset of any amount likely applies. WNI believes it is possible that it has already paid some or all of any sums Plaintiff claims are owed pursuant to the promissory notes, which are likely evidenced by the corporate records to which WNI has only recently gained access. Therefore, offset would apply to this extent.

///

Additionally, as discussed more fully below, WNI plans on filing a cross-complaint against Plaintiff for breach of fiduciary duties, among other causes of action. Any damages awarded to WNI pursuant to its cross-complaint would offset the damages claimed by Plaintiff.

### 2. *Second Prong*: Plaintiff Cannot Establish the Probable Validity of the Claim Upon Which the Attachment Would Be Based

Plaintiff cannot establish the probable validity of the claim upon which the attachment is based, and therefore Plaintiff's Application also fails under the second prong of Code of Civil Procedure section 485.220. A claim has "probable validity" if "it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (Code Civ. Proc., § 481.190.) Plaintiff seeks to recover damages pursuant to two promissory notes and alleged unpaid wages. It is *not* more likely than not that Plaintiff will obtain a judgment against WNI because: (1) the enforceability of the promissory notes is seriously in dispute; (2) at least one of the promissory notes appears to have a statute of limitations issue on its face; and (3) Plaintiff seeks damages for claims that are not properly before this Court.

#### a. Enforceability of Promissory Notes Seriously in Dispute

It is seriously in dispute whether Plaintiff will be able to enforce the promissory notes against WNI. Plaintiff himself executed the promissory notes, which were to inure to his benefit. It is questionable whether Plaintiff may enforce the promissory notes against WNI under such facts. Plaintiff appears to allege that the promissory notes are enforceable against WNI because they were "ratified" by the board of WNI. However, at the time of the board meeting referenced by Plaintiff, Mr. de Souza, a director of WNI, was not fully aware of the self-dealing actions that Plaintiff was taking, specifically, Plaintiff's use of WNI assets and WNI employees to build and develop Plaintiff's own company. (De Souza Declaration ¶ 5.) Had Mr. de Souza understood the full extent of Plaintiff's efforts to work at cross-purposes with WNI, he never would have "ratified" the promissory notes to Plaintiff and executed by Plaintiff himself. (De Souza Declaration ¶ 5.) The alleged ratification was therefore obtained through misstatements and/or fraud and is likely void. It is therefore seriously in doubt whether the promissory notes are enforceable.

///

Moreover, it is questionable whether Plaintiff may claim that WNI wrongfully failed to pay such notes when, at the time the notes became due, Plaintiff was still an officer and director of WNI and presumably had some power to ensure payment was made to him.  Throughout his declaration, Plaintiff claims he was wrongfully treated by the company, but he essentially was the company – at the time the notes became due he was WNI's President, Secretary, Treasurer, and Chairman of the Board.

There are, therefore, serious legal issues about the enforceability of the promissory notes against WNI, making it unlikely that Plaintiff will succeed on his claim against WNI.  Plaintiff's Application should therefore be denied on this ground as well.

### b. Promissory Note Has a Statute of Limitations Issue On its Face

The promissory note for $71,892.29 (as opposed to the promissory note for $2,000) was executed on June 30, 2001 and payable on June 30, 2003, more than four years prior to Plaintiff's complaint being filed on July 19, 2007.  It thus appears that Plaintiff's claim on this promissory note may be barred by the statute of limitations.  *See* Code Civ. Proc., § 337 ("Within four years: 1. An action upon any contract, obligation or liability founded upon an instrument in writing . . . .").

Even assuming that the board's "ratification" of the promissory notes somehow affects the running of the statute of limitations – which Plaintiff has not demonstrated and which WNI is not conceding herein – the alleged "ratification" was obtained through Plaintiff's misstatements and/or fraud as described above, and is therefore likely void.

Therefore, it is *not* "more likely than not" that Plaintiff will obtain a judgment against WNI on its claim pursuant to the $71,892.29 promissory note, and Plaintiff's Application fails for this reason.

### c. Plaintiff's Wage Claims Are Not Viable

Plaintiff's complaint seeks damages, in part, for "wages due" pursuant to an employment agreement.  In the first instance, Plaintiff has not provided proof that any such employment agreement exists, and WNI knows of no such employment agreement.  In addition, Plaintiff's complaint with respect to "wages due" fails and will be the subject of a 12(b)(6) motion on the following grounds: (1) no employment agreement exists; (2) on its face, the claims relate in part to

wages due in 2002 and are therefore far beyond the applicable statute of limitations; and (3) Plaintiff currently has a wage claim pending with the California Department of Industrial Relations, Division of Labor Standards Enforcement, and is therefore improperly before this Court because it is currently pending in another forum.

Therefore, Plaintiff cannot establish the probable validity of the wage claim, and his Application should fail on this ground as well.

> **3.** *Third Prong*: **On Information and Belief, the Attachment is Being Sought For Purposes Other Than the Recovery Upon the Claim Upon Which the Attachment is Based, To Wit, to Harass and Intentionally Harm WNI, and Further Plaintiff's Self-Dealing Efforts**

WNI believes that Plaintiff is seeking the Application for improper purposes, specifically, as part of Plaintiff's ongoing campaign to harass and cause WNI irreparable harm, and further Plaintiff's self-dealing efforts. Plaintiff therefore cannot establish that the attachment is being sought to recover upon the claim on which the attachment is based, as required by the third prong of Code of Civil Procedure section 485.220. This pattern and practice of harassing WNI and attempting to intentionally cause WNI harm is evidenced by other actions Plaintiff has taken to date, including his breach of fiduciary duties as President of WNI; his improper involvement in the *Hagan* lawsuit; his claims against WNI with the California Department of Industrial Relations, Division of Labor Standards Enforcement ("DLSE"); and his repeated attempts to obtain a writ of attachment.

Moreover, WNI has reason to believe that Plaintiff seeks attachment of the Source Code so that he himself can use it to advance the company he began creating while working for WNI. As stated in the Declaration of Mr. de Souza, the Source Code has no value to anyone other than (1) WNI, or (2) Plaintiff, for his use in his new company.

**Plaintiff's Breach of Fiduciary Duties.** Plaintiff has engaged in several activities with the specific intent of harassing WNI and causing WNI harm and, in the process, has breached his fiduciary duties to Plaintiff. As discussed in more detail in Section D below, Plaintiff participated in a deposition in the *Hagan* matter without notifying anyone else in WNI and without an attorney present, and made several self-serving and/or harmful statements ostensibly on behalf of WNI. WNI believes that this was done with the specific intent to harm WNI, especially in light of Plaintiff's

testimony that he expected to be removed as director and officer of WNI within the next several days. (*See* Exhibit A to Declaration of Jessica E. La Londe ("La Londe Declaration") ¶ 3, at pp. 29:7-30:5.)

WNI also has evidence that Plaintiff was using WNI's assets and employees to develop and build his own company. Plaintiff was using the monetary investments provided to WNI by Mr. de Souza's company (Cruzamerica/MRG International) to develop software for a separate company, owned and operated by Plaintiff. (De Souza Declaration ¶ 5.) Evidence of this includes a February 18, 2005 communication from Charles Brown & Associates relating to an NDA addressed to engineers who, at that time, were on the WNI payroll. (*See* Exhibit 1 to De Souza Declaration ¶ 5.) This is just one example of how Plaintiff has continually breached his fiduciary duties to WNI and seeks to harm WNI.

WNI plans on filing a cross-complaint against Plaintiff for breach of fiduciary duties, based in part on Plaintiff's actions discussed above, when it is due to respond to Plaintiff's complaint.

**DLSE Claim.** Around the time Plaintiff filed this lawsuit, Plaintiff also filed a claim against WNI with the DLSE, claiming certain past wages, some of which appear to be covered by this lawsuit. WNI believes that the DLSE claim has no basis in law and contains groundless and false allegations.[1] Moreover, Plaintiff has now added these same claims to the current lawsuit, lending support to WNI's argument that Plaintiff is merely filing these claims to harass WNI. WNI furthermore believes that this, combined with other actions, including Plaintiff's breach of fiduciary duties discussed above, establishes a pattern and practice of attempting to intentionally harm and harass WNI.

**Repeated Attempts to Obtain Writ of Attachment.** Plaintiff already attempted to obtain a writ of attachment in the San Mateo Superior Court and that application was denied. That application was sought using the identical standards as those required here. Plaintiff again set a hearing to obtain a writ of attachment in the San Mateo Superior Court for two days later. As stated

///

---

[1] For example, the claim based on wages owed in 2002 is untimely.

above, that hearing did not take place. Plaintiff now seeks an order from this Court, regarding the same matter. This is all part of Plaintiff's effort to harass and cause WNI harm.

**Source Code Value.** The Source Code cannot be used to satisfy a hypothetical future judgment because it has no value to third parties. Plaintiff has set forth no evidence to the contrary.

The Source Code has no value to third parties and only has value to WNI and Plaintiff, if he intends on using it to further develop the company he developed as an officer of WNI. (De Souza Declaration ¶ 3.) The Source Code has no value in the open market and could not even be sold such that it could be used to satisfy a potential judgment against WNI. Plaintiff's own deposition indicates that the value of the source code is to WNI and its subsidiaries - no one else. (*See* Exhibit A to La Londe Declaration ¶ 3, at pp. 17:9-18:6.) This demonstrates that Plaintiff seeks the Source Code only to harm WNI and/or use it to advance his own company.

Plaintiff argues that the Source Code is the only "remaining assets from which defendant can or will pay a judgment." (*See* Plaintiff's Application, 4:24-26.) This is incorrect. The financial statements set forth in Exhibit D to Plaintiff's declaration are more than two and one half years old, and do not accurately reflect the financial condition of WNI. (De Souza Declaration ¶ 6.) Furthermore, paragraph 19 of Plaintiff's declaration, wherein he states that WNI's subsidiary has sufficient monetary assets, contradicts Plaintiff's allegations that there is insufficient cash flow to satisfy any potential judgment Plaintiff may obtain. (De Souza Declaration ¶ 6.) Therefore, it is simply untrue that, if the Source Code were to be sent to Brazil, "there will be no remaining assets from which defendant can or will pay a judgment," as contended by Plaintiff.

Plaintiff states that Mr. de Souza is working to strip WNI of its assets. This too is simply untrue. Mr. de Souza's company, Cruzamerica/MRG International, loaned WNI almost $4 million. (De Souza Declaration ¶ 4.) Part of this debt was converted into 112,791 shares of WNI. (De Souza Declaration ¶ 4.) In addition, Cruzamerica/MRG is a major creditor of WNI because almost $1 million of the amount it loaned to WNI was not converted into equity and remains due. (De Souza Declaration ¶ 4.) Therefore, Mr. de Souza's company has a major equity interest in WNI and is the major creditor of WNI, and has absolutely no interest in seeing that WNI fails. (De Souza Declaration ¶ 4.)

Plaintiff's declaration contains several other statements that are simply not supported in law or fact. For example, he states that he will be unable to enforce a judgment against Mr. de Souza in Brazil. However, this statement ignores the fact that Mr. de Souza is not the defendant here – WNI is. In addition, Plaintiff has not demonstrated or cited any reason under law that a judgment could not be enforced in Brazil. Plaintiff furthermore states in his declaration that "all of the shareholders and the creditors of Wireless Networks will be left with an absolute zero remedy." (*See* Plaintiff's Declaration at p. 12:9). This case involves only Plaintiff and WNI – not the shareholders or alleged creditors of WNI – and, therefore, consideration of any hypothetical interest they have in the Source Code is inappropriate. With this writ application, the Court is under no obligation to protect the interests, if any, of third parties not parties to this litigation, and not seeking to attach WNI's Source Code.

It is clear that Plaintiff seeks to attach the Source Code only to harm WNI by impeding its ability to generate revenue and/or to use the Source Code to further develop his own company. Plaintiff's Application should therefore be denied.

**C.     The Attachment Would Have a Serious Detrimental Effect on WNI's Business**

The Source Code is integral to WNI's business and without the Source Code, WNI cannot conduct its business. (De Souza declaration ¶ 3.) Plaintiff seeks to attach the very thing that allows WNI to conduct business and generate revenue, and his Application should be denied on this ground as well.

The Court is required to assess the harm to the potentially affected party, WNI, caused by the requested writ of attachment. (*North Hollywood Marble Co., Inc. v. Superior Court* (1984) 157 Cal.App.3d 683, 690.) Further, the Court must consider "the interest of the defendant in avoiding potential adverse financial consequences." (*Id.* at 690.)

The property sought to be attached will have a serious detrimental effect on WNI, which will inhibit it from running its business, further undermining the logic behind the present Application. One of WNI's main non-monetary assets is the Source Code. The Source Code has already been subject to a writ since July 11, 2007. The longer the Source Code is unavailable to WNI, the less value it has to WNI, and WNI must expend additional time and money to conduct its business

without the Source Code. Plaintiff is well aware of the Source Code's value to WNI and, in seeking the writ, is attempting to purposefully harm and harass WNI.

Moreover, Plaintiff is seeking to attach the very thing that enables WNI to conduct its business. It cannot conduct business without the Source Code and, therefore, attaching and holding it prevents WNI from making any money. Therefore, Plaintiff is engaging in a self-fulfilling prophecy. Plaintiff claims that WNI has no money, yet wants to attach and have the Court hold the very thing that enables WNI to make money.

Given the very detrimental result attachment of the Source Code has had and will continue to have on WNI, attachment of the Source Code should be denied.

### D. Attachment in the *Hagan* Matter Was Obtained Through Collusion and/or Fraud

The attachment of the Source Code in the *Hagan* matter was obtained through the collusion of Mr. Hagan and Plaintiff, and possibly rises to the level of a fraud on the San Mateo Superior Court. In *Hagan v. Wireless Networks Inc.*, Case No. CIV 464141, pending in the San Mateo Superior Court, WNI's former attorney, James Hagan, filed a complaint against WNI on June 29, 2007, alleging unpaid legal bills. Plaintiff in this matter accepted service of Mr. Hagan's complaint in the *Hagan* matter, ostensibly on behalf of WNI, and voluntarily waived the arbitration process as administered through the Palo Alto Bar Association. (*See* Exhibits B and C to La Londe Declaration ¶¶ 4-5.)

On July 6, 2007, while Plaintiff was still an officer and director of WNI, Plaintiff volunteered to be deposed by Mr. Hagan in the *Hagan* lawsuit. During this deposition, Plaintiff made various statements allegedly on behalf of WNI, that were extremely harmful and detrimental to WNI, and which Plaintiff had no authority to make. Specifically, Plaintiff made representations about the Source Code, and then proceeded to state that there was no reason Mr. Hagan's bills should not be paid, and that WNI had no legal defense that would justify the nonpayment of the promissory notes issued to Plaintiff. (*See* Exhibit A to La Londe Declaration ¶ 3, at pp.17:9-18:6, 24:9-25:7.) These statements were obviously self-serving and very detrimental to WNI – the very company which Plaintiff alleges he was acting for the benefit of.

Plaintiff volunteered for this deposition without WNI's authority, without notifying any director and/or shareholders of WNI, and attended the deposition without an attorney present. (De Souza Declaration ¶ 7; Exhibit A to La Londe Declaration ¶ 3, at p. 2.) Plaintiff made several unsupported assertions, including offering legal opinions about various issues related to WNI. Moreover, Plaintiff volunteered for this deposition knowing that he was about to lose his positions within WNI and, on information and belief, knowing that he was going to file a lawsuit against WNI. Moreover, it is disingenuous for Plaintiff to state in his declaration that he was attending the deposition "as my fiduciary obligation to the Company required me to do" (Brown Declaration ¶ 25, at p. 11:7-8.), as there is no fiduciary obligation to attend a deposition, and Plaintiff believed he would be removed as director and officer of WNI within the next week. (*See* Exhibit A to La Londe Declaration ¶ 3, at pp. 29:7-30:5.) Plaintiff therefore submitted to the deposition in collusion with Mr. Hagan and for self-serving purposes.

Based on Plaintiff's deposition testimony, Mr. Hagan applied for a writ of attachment with respect to the Source Code. (*See* Exhibit C to La Londe Declaration ¶ 5.) Mr. Hagan's declaration in support of this writ states that he notified only Plaintiff of the *ex parte* hearing, that Plaintiff represented that WNI was not currently represented by legal counsel, and that Plaintiff stated he would attend the hearing himself, ostensibly on behalf of WNI – only days before WNI voted to remove Plaintiff from office and Plaintiff expected same. (*See* Exhibit A to La Londe Declaration ¶ 3, at pp. 29:7-30:5; Exhibit C to La Londe Declaration ¶ 5.) No effort was made to notify any other representative and/or shareholder of WNI, as is clear from Mr. Hagan's declaration in support of the writ. On July 11, 2007, Mr. Hagan obtained a writ of attachment against WNI with respect to the aforementioned Source Code, which is presently sitting in the Superior Court for San Mateo, pursuant to Code of Civil Procedure section 572. (*See* Exhibit C to La Londe Declaration ¶ 5.) WNI and Mr. Hagan have reached a settlement with respect to Mr. Hagan's matter, pursuant to which Mr. Hagan and WNI will execute a stipulation for an order vacating the writ of attachment and Code of Civil Procedure section 572 order regarding the Source Code.

The attachment obtained in the *Hagan* matter was therefore the result of collusion between Plaintiff and Mr. Hagan, from the self-serving deposition to the failure to notify WNI of the writ

application. WNI asserts that these actions were taken with the specific intent of going around WNI to allow Plaintiff to improperly control access to the Source Code.

## IV.     CONCLUSION

Plaintiff's Application should be denied. The writ issued in the *Hagan* matter was done under very different circumstances than those that exist here. Plaintiff has already attempted and failed to obtain a writ in this matter, and nothing has changed that would justify a different outcome here.

Moreover, Plaintiff cannot meet the requirements for the issuance of a writ of attachment, as a matter of law. Plaintiff cannot demonstrate that the amounts he seeks are fixed or readily ascertainable, as the amounts are seriously in dispute, and are not capable of easy resolution. Plaintiff also cannot establish that he will more likely than not succeed on its claims against WNI, as it is questionable whether the promissory notes may be enforced and whether the claim for lost wages has any validity. Plaintiff also appears to be applying for the writ as one more step in his campaign of harassment and intentional harm to WNI. Lastly, even if Plaintiff could satisfy all of the requirements for a writ to issue, which he cannot, the Court should not issue a writ of attachment because of the serious and irreparable harm it will cause WNI.

Based on all the above, Plaintiff's Application should be denied.

Dated: August 28, 2007                                **DUANE MORRIS LLP**

By:      /s/ Jessica E. La Londe
Daniel J. Herling
Lina M. Brenner
Jessica E. La Londe
Attorneys for Defendant
Wireless Networks, Inc.