DANIEL J. HERLING (SBN 103711)
LINA M. BRENNER (SBN 191075)
JESSICA E. LA LONDE (SBN 235744)
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail:   djherling@duanemorris.com
          lmbrenner@duanemorris.com
          jelalonde@duanemorris.com

Attorneys for Defendant
WIRELESS NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES M. BROWN, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>WIRELESS NETWORKS, INC., a Delaware corporation,<br><br>    Defendant. | Case No. C 07-4301 EDL<br><br>**DECLARATION OF RUY ROTHSCHILD DE SOUZA IN SUPPORT OF THE OPPOSITION OF DEFENDANT WIRELESS NETWORKS, INC. TO PLAINTIFF'S *EX PARTE* APPLICATION FOR RIGHT TO ATTACH ORDER**<br><br>Date:   August 31, 2007<br>Time:   10:00 a.m.<br>Dept:   Courtroom E, 15th Floor<br><br>Judge:  Magistrate Elizabeth D. Laporte |

I, Ruy Rothschild de Souza, state as follows:

1.   I am a resident of Sao Paulo, Brazil, a member of the Board of Directors of defendant Wireless Networks, Inc. ("WNI"), and have personal knowledge of the facts set forth in this declaration. If called upon as a witness, I could and would competently testify to the facts contained in this declaration of my own personal knowledge.

2.   I have reviewed the declaration of Charles Brown in support of the Emergency *ex parte* Application for Right to Attach Order. This declaration is fraught with mischaracterizations,

misrepresentations, and factual inaccuracies. For example, in my capacity as director of WNI and principal of the controlling stockholder of WNI and WN do Brasil, I never refused to execute any license agreement. Mr. Brown's declaration in paragraph 7 that I failed to put any license agreement in place between WNI and WN do Brasil is false. It was exactly the contrary. After many discussions about executing a license agreement that would be legal under both Brazilian and U.S. laws, Mr. Brown refused to sign such an agreement. Instead, Mr. Brown attempted to force WNI and WN do Brasil to execute a license agreement unacceptable under Brazilian law, that would consequently disallow the remittance of royalties abroad. This is just one example of Mr. Brown's mismanagement and intent to impede efforts to run WNI in the proper way.

As set forth above, I am ready and willing to rebut each and every misstatement of Mr. Brown, but I will, in this declaration, address the issues relevant to the *ex parte* application. Therefore, I am reserving my right to confront Mr. Brown on a point-by-point basis and my silence on certain issues should not be construed as acquiescence to his declaration.

3.  The source code at issue is property of WNI. The source code has no value to the market outside of WNI, as it is integral to WNI and its subsidiary operations, which will enable WNI and its subsidiaries to generate revenue. In fact, these source codes would be valuable only to someone that intends to copy/reproduce the same unique services that WNI renders to the market.

4.  Mr. Brown's conjecture in paragraph 27 that I was trying to get the source code without paying for it and then let the parent corporation go out of business has no basis in fact and/or logic. The facts are that Cruzamerica/MRG International loaned WNI almost $4 million. Part of this debt was converted into 112,791 shares of WNI. Furthermore, Cruzamerica/MRG continues to be the major creditor of WNI, as almost $1 million of the amount it loaned WNI remains due and was not converted into equity. Accordingly, I both have a major equity interest in WNI and am the major creditor of the parent company and it would make no economic sense for me to allow the parent company to fail. Additionally, WN do Brasil, alleged by Mr. Brown to become the "illegal" recipient of the source code, is a wholly-owned subsidiary of WNI, the parent company. Again, allowing the parent company to fail makes no economic sense for WN do

Brasil. This Brazilian subsidiary is responsible for the only operation established by WNI (there is no operation in the US), prior to my entrance into WNI, and, thus, is the only cash generator of WNI. So here, more than a guaranty for the present monetary dispute, the issue is WNI's access to its own source codes, vital to continue the development and support of its operation.

5. Exhibit A to Brown's declaration allegedly reflects that the promissory notes were "ratified" by the Board of Directors of WNI, which consisted of Mr. Brown and myself. At the time of the April 2005 board meeting, I was unaware of the full specifics of Mr. Brown's activity as the President, Secretary, and Treasurer of WNI. As I later learned in detail, he was using the monetary investments provided to WNI by my company (Cruzamerica/MRG International) to develop software for a separate company, owned and operated by him. (Attached, incorporated, and marked as Exhibit 1 to my declaration is a copy of a February 18, 2005 communication from Charles Brown & Associates relating to an NDA addressed to engineers who, at that time, were on the WNI payroll.) My attorneys, at my direction, are currently reviewing hundreds of e-mails that reflect Mr. Brown's actions while he was a member of the Board of Directors and the holder of all of the offices of WNI as it related to the development of his own company. Accordingly any "ratification" of promissory notes issued to Mr. Brown was obtained via omission of facts, misrepresentation of facts, and/or fraud by Mr. Brown. Had I understood the full extent of Mr. Brown's efforts in attempting to set up and develop his own company, I never would have "ratified" the promissory notes that were executed by Mr. Brown himself.

6. The financial statements set forth in Exhibit D to Mr. Brown's declaration are more than two and one half years old. They do not accurately reflect the financial condition of WNI. Furthermore, paragraph 19 contradicts Mr. Brown's allegations that there is insufficient cash flow to satisfy any potential judgment Mr. Brown may achieve.

7. Neither any of WNI's agents other than Mr. Brown, nor I, as a director of WNI, received any notice of the deposition that Mr. Brown appeared for on July 6, 2007, ostensibly on behalf of WNI. Mr. Brown did not, in fact, have the authority to appear for that deposition without counsel.

8. Neither any of WNI's agents other than Mr. Brown, nor I, as a director of WNI, received notice of the *ex parte* hearing on Mr. Hagan's application for a writ in *The Hagan Law Firm v. WNI* matter, and did not learn of the application for a writ until after the order had already been issued on July 11, 2007.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. The declaration was executed this ____ day of August 2007, in San Paulo, Brazil.

_____
RUY Rothschild de Souza