# EXHIBIT F

**SOFTWARE LICENSE AGREEMENT**

By this private agreement, the undersigned parties:

(A) **WIRELESS NETWORK, INC.**, a company duly organized and existing under the laws of the State of Delaware, in the United States of America, with its head-offices located at P.O. Box 620752, Woodside, State of California, Zip Code 94062, herein in the form of its By-Law, by it undersigned Chief Executive Officer Mr. **Charles Michael Brown**, an American citizen, executive, holder of the Passport n.º 157105715, resident at 55 Skylonda, in the City of Woodside, State of California (hereinafter referred to as "**LICENSOR**"); and

(B) **WIRELESS NETWORK DO BRASIL LTDA.**, a limited liability quota company duly organized and existing under the laws of the Federate Republic of Brazil, with its head-offices located in the City of Barueri, State of São Paulo, at Alameda Araguaia n.º 933, 5th floor, room 51, enrolled with the CNPJ/MF (Corporate Federal Taxpayers Registry – Finance Department) under No. 03.358.131/0001-33, herein in the form of its By-Law, by it undersigned Chief Executive Officer Mr. **Jorge Antonio Silveira Vieira**, a Brazilian citizen, business administrator, married, bearer of the ID card, RG number 10.203.174 SSP/SP, enrolled at Individual Taxpayer's Registry (C.P.F./M.F.) under number 032.051.418-81, resident in the City of São Paulo, at Rua Estrada José Roberto Faleiros, number 85, house 61, Condomínio Arueira; (hereinafter referred to as "**LICENSEE**"),

(**LICENSEE** and **LICENSOR** hereinafter individually referred to as "PARTY" and jointly refereed to as "PARTIES")

WHEREAS, **LICENSOR** owns any and all proprietary rights and copyright of the software listed in Exhibit A, here in after the "Software"

WHEREAS, pursuant to the terms and conditions set forth herein, **LICENSEE** desires to use the Software, and **LICENSOR** wants to license the software to **LICENSEE** and to render certain services related to the Software, as set forth herein,

NOW, THEREFORE, for good and valuable consideration for the premises and covenants contained herein, the PARTIES hereof agree to enter into this Software License Agreement ("Agreement") as follows:

1. THE OBJECT

     1.1. This Agreement sets forth the terms and conditions under which the **LICENSOR** agrees to (i) grant to **LICENSEE** the exclusive and transferable license to use the Software that **LICENSOR**

1

makes available to **LICENSEE** in hardcopy or electronic form in conjunction with the License ("License"), and (ii) grant the rights for **LICENSEE** requests to **LICENSOR** any alteration, modification, assistance, support, services and updates related to the Software, according to the provisions contained in this Agreement and allowed by Brazilian law.

## 2.    THE LICENSE

2.1.    Upon this agreement the **LICENSOR** grants to **LICENSEE** a exclusive and transferable license to install, use and reproduce the Software, solely for **LICENSEE**'s own business purposes. **LICENSEE**'s own business purposes concern develop business of data transmission in Brazil (Territory).

2.1.1.    **LICENSEE** shall assume all responsibility for the quality of the copies made hereunder. **LICENSEE** shall include **LICENSOR**'s and any third party licensors' copyright notices, proprietary rights legends, and other indicia of ownership on all copies, in the content and format as those that were contained on the Software. **LICENSEE** shall not pay any duplication and distribution costs incurred by copying the Software as permitted under this Agreement.

2.1.2.    **LICENSEE** shall not, and shall not permit any employee or other related third party, to: modify, analyze, reverse engineer, decompile, disassemble, convert, or apply any procedure or process to the Software in order to ascertain, derive, and/or appropriate for any reason or purpose, the source code of the Software or to create derivative works using the source code of the Software.

2.2.    Upon performance of any customization, **LICENSOR** shall ensure that all graphic interfaces of the Software are in accordance with the **LICENSEE**'s systems.

2.3.    **LICENSOR** shall revise, update, maintain, install and/or support the Software during the term of this Agreement when requested by **LICENSEE,** without any collection of extra payments and/or fees.

## 3.    TERM

3.1.    **LICENSOR** grants the License to **LICENSEE** under an indeterminate period of time ("Term").

**4.    PAYMENT**

4.1.    **LICENSEE** shall pay to **LICENSOR** for the License in accordance with the terms and conditions set forth herein, the minimum amount of USD 15,000.00 (fifteen thousand dollars), the equivalent of 4% (four percent) over the Net Revenue of the products developed with **LICENSOR**'s new technology, monthly during the term at the Agreement. ("Price").

4.2.    It is included in the Price for the License any alteration, modification, assistance, support, services and updates related to the Software.

4.3.    All tax levies or contributions falling upon this Agreement and due outside Brazil shall be paid by WNI and borne by it. All tax levies and contributions falling upon this Agreement and due in Brazil shall be paid by WNB and borne by it, except for income tax (IR) that shall be borne by WNI.

**5.    INTELLECTUAL PROPERTY AND COPYRIGHT**

5.1.    **LICENSOR** grants to **LICENSEE** any right to use any trademark, trade name, logo, or other intellectual property and/or copyright, whether registered or unregistered, of **LICENSOR** only if related to the Software. **LICENSEE** shall not alter or remove any patent, intellectual property, copyright, trademark, trade secret, or other proprietary notices contained on or in copies of the Software, and **LICENSEE** shall reproduce all such notices on or in all copies of the Software permitted to be made hereunder.

5.2.    **LICENSEE** does not grant to **LICENSOR** any right to use any trademark, trade name, logo, or other intellectual property and/or copyright, whether registered or unregistered, of **LICENSEE**.

5.3.    Upon violation of any patent, intellectual property, copyright, trademark, trade secret, or other proprietary notices **LICENSEE** shall promptly report to **LICENSOR** any actual or suspected violation of this Section 5 and shall take all reasonable and necessary further steps reasonable to prevent or remedy any such violation.

**6.    PROPRIETARY INFORMATION AND CONFIDENTIALITY.**

6.1.    All trade secret, confidential, and proprietary information ("Proprietary Information") designated as such in writing by either **LICENSEE** or **LICENSOR** (a "Disclosing Party") to the other (the "Recipient"), whether by letter or by the use of an appropriate proprietary stamp or legend, prior to

or at the time any such trade secret, confidential, or proprietary information is disclosed by the Disclosing Party to the Recipient. Notwithstanding the foregoing, information which is orally or visually disclosed or is disclosed in writing without an appropriate letter, proprietary stamp, or legend shall constitute Proprietary Information if the Disclosing Party (i) so indicates at the time of disclosure and (ii) within thirty (30) days after such disclosure, delivers to the Recipient a written document or documents describing such Proprietary Information and referencing the place and date of such oral, visual, or written disclosure and the names of the employees or officers of the Recipient to whom such disclosure was made. Proprietary Information shall not include any information to the extent it:

(i) is in the Recipient's possession at the time of disclosure otherwise than as a result of the Recipient's breach of any legal obligation;

(ii) becomes known to the Recipient through disclosure by sources other than the Disclosing Party who have the legal right to disclose such Proprietary Information;

(iii) is independently developed by or for the Recipient without reference to or reliance upon the Disclosing Party's Proprietary Information; or

(iv) is required to be disclosed by the Recipient to comply with applicable laws or governmental regulations, provided that the Recipient provides prior written notice of such disclosure to the Disclosing Party and takes reasonable and lawful actions, as specified by and at the expense of the Disclosing Party, to avoid and minimize the extent of such disclosure.

6.2.  Each of **LICENSEE** and **LICENSOR** shall hold the other's Proprietary Information in confidence using the same standard of care as using to protect its own information of a similar nature (but in any case not less than a reasonable degree of care) and shall not disclose the other's Proprietary Information to any person except such of the Recipient's employees and agents who have a need to know such Proprietary Information in the course of the performance of their duties for the Recipient and who are bound in writing to preserve the confidentiality of the Proprietary Information. The Recipient shall use Proprietary Information only for the purpose for which it was disclosed and shall not otherwise use or exploit the Proprietary Information for its own benefit or the benefit of another without the prior written consent of the Disclosing Party. Each of **LICENSEE** and **LICENSOR** shall take appropriate action by instruction or agreement with its employees and agents to satisfy its obligations under this Section 6. Either PARTY shall promptly report to the other PARTY any actual or suspected violation of this Section 6 and shall take all reasonable and necessary further steps requested by the other party to prevent or remedy any such violation.

7. **WARRANTY AND EXCLUSION OF WARRANTIES.**

7.1. This warranty is given by **LICENSOR** for an indeterminate period of time in the event of defects, errors or problems inherent to the concept of the Software.

7.2. Without any cost to **LICENSEE**, **LICENSOR** shall use all appropriate resources for correct any defect, error or problem of the Software to perform the proper functions if the Software is used in accordance with **LICENSOR's** instruction, will perform substantially in accordance with the performance warranty by the **LICENSOR**.

8. **TERMINATION**

8.1. **LICENSOR** may immediately terminate this Agreement, the licenses granted hereunder, and **LICENSOR's** obligations to **LICENSEE** if **LICENSEE** breaches any of its material obligations under this Agreement and does not correct the failure within 30 (thirty) days after the receipt of a prior written notice from **LICENSOR**.

8.1.1 Such termination shall not prejudice **LICENSOR's** right to damages or any other remedy available at law. Upon the effective date of termination of this Agreement by **LICENSOR** in the case **LICENSEE** has breached any of its material obligations under this Agreement, except as otherwise provided in this Agreement, **LICENSEE** shall (i) stop all use of the Software; and (ii) delete all copies of the Software from its computer.

8.2. **LICENSEE** may immediately terminate this Agreement and **LICENSEE's** obligations to **LICENSOR** if (i) at its own discretion, **LICENSEE** notifies **LICENSOR** in writing, at least thirty (30) days in advance, of its intention to terminate this Agreement, provided that **LICENSEE** has paid all fees and expenses due to **LICENSOR** under this Agreement, or (ii) **LICENSOR** breaches any of its material obligations under this Agreement, and does not correct the failure within 30 (thirty) days after the receipt of a prior written notice from **LICENSEE**; or (iii) **LICENSOR** goes bankrupt or ceases to operate or to produce, maintain, update or upgrade the Software.

8.2.1. Such termination shall not prejudice **LICENSEE's** right to damages or any other remedy available at law. Upon the effective date of termination by **LICENSEE** of this Agreement, **LICENSOR** shall (i) reimburse or pay to **LICENSEE** any amount or penalty due under this Agreement, without prejudice to **LICENSEE's** right to continue using the Software in accordance with the provisions of this Agreement until such time when **LICENSEE** is able to replace them.

(i) take all measures incumbent thereon for the definitive delivery and transfer to **LICENSEE** of the source codes for the Software, (em caso de falência ou falta de condições para atualização)

9. **NOTICES**

9.1. All notices, consents, requests and other communications herein shall be in writing and shall be sent by hand delivery, by certified or registered mail (return-receipt requested), by e-mail or by recognized national overnight courier service as set forth below:

| If to **LICENSEE**: | If to **LICENSOR**: |
|---|---|
| Attention: | Attention: |
| Address: | Address: |
| Fax: | Fax: |
| E-mail: | E-mail: |

9.1.1. Notices delivered pursuant to this Section 14 shall be deemed given: (i) at the time delivered, if personally delivered; (ii) at the time received, if by e-mail or mail; and (iii) two (2) business days after timely delivery to the courier, if by overnight courier service.

10. **GENERAL PROVISIONS**

10.1. <u>Force Majeure</u>. Neither PARTY shall be liable for a delay in the performance of its obligations and responsibilities under this Agreement due to causes beyond its control, including, but not limited to, failures or delays in transportation or communication, failures or substitutions of equipment, labor disputes, accidents, shortages of labor, fuel, raw materials or equipment or technical failures, acts of God, catastrophes and war, provided that the delayed party has taken reasonable measures to notify the other, in writing, of the delay. The time for completion of any obligation to which this provision applies shall be extended for a period equivalent to the delay.

10.2. <u>Amendment.</u> This Agreement shall not be deemed or construed to be modified, amended, or waived, in whole or in part, except by a written agreement executed by the authorized representatives of both PARTIES.

10.3. <u>Waiver</u>. No term or provision of this Agreement shall be deemed waived and no breach excused unless such waiver or consent shall be in writing and signed by the PARTY claimed to have

6

waived or consented. Any consent to or waiver of a breach by either PARTY shall not constitute a consent to or waiver or excuse of any other different or subsequent breach.

10.4. <u>Severability</u>. In the event that any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, invalid or in conflict with any law of any relevant jurisdiction, then that provision shall be enforced to the maximum extent permissible so as to effect the intent of the PARTIES. The validity of the remaining provisions of this Agreement shall not be affected, and the rights and obligations of the PARTIES shall be construed and enforced as if the Agreement did not contain the particular provision(s) held to be unenforceable.

10.5. <u>Assignment.</u> Neither this Agreement nor any rights hereunder may be assigned or duties delegated (whether by operation of law or otherwise) by the PARTIES without the prior written consent of the other Any attempted assignment or delegation without such prior written consent shall be wholly void and totally ineffective for all purposes.

10.6. <u>Relationship of the PARTIES.</u> In the performance of its services hereunder, PARTIES will at all times be independent contractors, and this Agreement shall not constitute, nor be deemed to constitute, either PARTY as an employee, agent, partner or joint venture of the other PARTY.

10.7. <u>Governing Law and Venue.</u> The validity, construction, and interpretation of this Agreement and the rights and duties of the PARTIES shall be governed by and construed in accordance with the laws of the Federative Republic of Brazil, excluding its conflicts of laws provisions. The PARTIES expressly agree that any action arising out of or relating to this Agreement shall only be brought in a federal or state court in the City of São Paulo, State of São Paulo, and the PARTIES hereby submit themselves to the exclusive jurisdiction and venue of such courts.

10.8. <u>Authority.</u> Each PARTY represents that it has full power and authority to enter into and perform this Agreement, has the right to disclose all information and materials made available to the other, and the person signing this Agreement, on behalf of each, has been properly authorized and empowered to execute this Agreement.

10.9. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement between **LICENSEE** and **LICENSOR** with respect to the subject matter of this Agreement and supersedes all prior agreements and understandings, whether oral or written, between the parties with respect to the subject matter of this Agreement. If **LICENSEE** issues a purchase order or other similar document, it shall be for its internal purposes and, even if it is acknowledged by **LICENSOR**, will have no effect on this Agreement.

10.10. <u>Dispute Resolution</u>. All disputes arising out of or in connection with the present Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce of Paris - ICC by one or more arbitrators appointed in accordance with the said rules.

10.10.1 The arbitration shall take place in the city of São Paulo - SP, Brazil. The language adopted for the arbitration shall be English.

10.10.2. This Agreement shall be governed by Brazilian law and binds the parties and their successors under any heading, being executed in an irrevocable nature.

10.11.    <u>Language</u>. This Agreement is executed in English and Portuguese. In case on any discrepancy, the Portuguese version shall prevail.

IN WITNESS WHEREOF, the PARTIES hereby executed this Agreement by and through their, respective and duly authorized representatives.

São Paulo, __, 2004

**WIRELESS NETWORK, INC**
Mr. **Charles Michael Brown**


**WIRELESS NETWORK DO BRASIL LTDA.**
Mr. **Jorge Antonio Silveira Vieira**


WITNESSES:

1. _____    2. _____

**EXHIBIT A: SOFTWARE**

8