JEFFREY F. RYAN, ESQ. SBN 129079
RYAN & STEINER
An Association of Attorneys
455 North Whisman Road, Suite 200
Mountain View, CA 94043-5721
Telephone:    (650) 691-1430
Facsimile:     (650) 968-2685

Attorneys for Plaintiff,
CHARLES M. BROWN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES M. BROWN,<br><br>Plaintiff,<br><br>vs.<br><br>WIRELESS NETWORKS, INC., a Delaware corporation, and DOES 1 THROUGH 50,<br><br>Defendant. | Case No.: C-07-04301 EDL<br><br>**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: RETENTION OF SOURCE CODE IN CALIFORNIA AND/OR FOR AN ORDER INCREASING THE AMOUNT OF DEFENDANT'S BOND; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Dept.:   Courtroom E, 15th Floor**<br>**Judge:  Magistrate Elizabeth D. Laporte** |

Plaintiff Charles M. Brown ("Brown" or "Plaintiff") hereby moves the court, ex parte, for a temporary restraining order and order to show cause to prohibit defendant Wireless Networks, Inc. ("WNI" or "Defendant") from removing the original Source Code presently on deposit with the Superior Court for the County of San Mateo, or any copy thereof, from the State of California until final resolution and satisfaction of judgment in this matter. Alternatively, Plaintiff asks this Court to increase the bond Defendant must file as an alternative to attachment and deposit of the Source Code in this matter to $200,000.00, in order to provide a fund for recovery from Defendant, which appears intent on removing its lone remaining asset (the Source Code) from the country at the earliest possible moment. Pursuant to local rule 7.10, this application is authorized to be sought on an ex parte basis under Federal Rule of Civil Procedure 65(b).

## INTRODUCTION AND BACKGROUND

Plaintiff Brown was the founder, and past Chairman and CEO of Defendant WNI, and continued to serve WNI as its President until his resignation July 13, 2007. WNI was founded in 1997 in the Silicon Valley and has been based there ever since – or at least until this action was removed by WNI from state court based on its assertion that its principal place of business is now in Brazil. WNI's business is the licensing of its self-developed technology for the operation of network infrastructures based on the Internet protocols (IP) and wireless technologies for financial institutions involved in electronic commerce. WNI's core business objectives as of year 2000, utilizing a Brazilian subsidiary ("WNB"), were five fold according to its business plan:

1. Build a reliable product and service model in Brazil that generates a compelling return on investment.

2. Establish a brand name. Brazil is a major worldwide market, and the financial transaction business is a small community.

3. Create a base to expand the wireless infrastructure business. Brazil is one of the best wireless markets in the world where great opportunities exist which complement WNI's core competencies.

4. Complete deployment of the product and service to provide existence-proof in Brazil and credibility in financial markets for raising additional capital at good prices and create shareholder value.

5. Replicate and expand the product in Brazil and other emerging markets in South America, Asia, Europe and the Caribbean.

WNI's core technologies included packet radio, wireless broadband, and WNI-patented control software developed and tested in the Company's own internal engineering groups in the Silicon Valley and Brazil. Its development strategies included growing existing and future technology investments into horizontal regional networks supporting a wide array of vertical services. Customer Support was provided through multinational three-level Network Operations structure, with regional centers linked to the main Network Operations Center located in the

Silicon Valley. In short, WNI was a Silicon Valley based technology development company that licensed its technology to a Brazilian subsidiary in order to prove that the technology worked, so that WNI could attract investment from other geographic areas for expansion.

Into this situation stepped Mr. Ruy Rothschild de Souza. Mr. de Souza initially acquired management control of WNB – the Brazilian subsidiary that was using WNI's technology and thereby providing proof that it worked. Mr. de Souza also provided a loan to WNI to further its ongoing development of its technology – a loan that would have been repaid by WNI from the license revenues it was to receive from WNB. At the time he became involved with WNI, Mr. de Souza expressed to the other WNI shareholders his agreement and concurrence with WNI's business plan, including its planned expansion into other markets. What followed, however, shows a carefully orchestrated plan to transfer WNI's technology, embodied in its Source Code, to WNB without compensating WNI or its other shareholders for the technology.

To effect his scheme, Mr. de Souza refused execute on WNB's behalf the new license agreement that was to provide market revenues to WNI, instead insisting on multiple extensions of a prior sub-market rate agreement. By this refusal, WNI was unable to retire the loan from Mr. de Souza, who allowed the debt to grow, and then exercised an option to convert debt to equity and acquire controlling interest in WNI. Then, Mr. de Souza orchestrated a paring of WNI, eliminating its key business personnel and engineers by refusing to pay them, cutting off support access so WNI could continue to service its technology, and refusing every opportunity for WNI to secure new markets and financing. Finally, Mr. de Souza allowed WNB to cease all payments to WNI including both license fees and payment of $1.5 million in debt owed by WNB to WNI. Having all but shut WNI down, Mr. de Souza sought to take the Source Code to Brazil where WNB would have complete control, and WNI and its shareholders would be left holding the proverbial bag in the United States.

This scheme would have likely succeeded except that among the creditors of WNI was the Hagan Law firm, which filed an action in the Superior Court of California, San Mateo County, for unpaid fees and under California law obtained an attachment of the Source Code, which was deposited into that court. Thwarted, Mr. de Souza was forced to the table with the

Hagan firm, and negotiated a settlement designed to secure the release of the Source Code. Meanwhile, Plaintiff Brown commenced a separate action for non-payment of certain promissory notes owed to him by WNI, and for non-payment of wages owed by WNI. WNI removed the case on the basis of diversity jurisdiction – the premise being presumably that having stripped WNI of all of its Silicon Valley based personnel, operations and assets, WNI's de facto principal place of business is now in Sao Paulo Brazil (which, conveniently, is where WNB resides).[1]

Brown sought a writ of attachment from this court under California law based upon the promissory notes (written contracts) due in the amount of $51,617.32 (more than the statutory minimum of $500.00). Because of WNI's questionable[2] assertion that it cannot do business without the Source Code, this Court directed that WNI post a bond in lieu of attachment and deposit of the Source Code to address WNI's claimed need for the Source Code and Brown's right to protection for collection of a potential judgment in this matter.

By this motion Brown seeks a further order from this court to restrain WNI from removing the Source Code, or any copy thereof, from the State of California. WNI has since its inception operated from California. There is no reason, short of the fact that WNI has fired all of the individuals responsible for the development and engineering of the program by refusing to pay their wages that WNI cannot continue to operate from California with the Source Code residing in this State. In addition, or alternatively, because the promissory notes upon which this action is based expressly provide for an award of attorneys fees to the prevailing party, Brown requests that the Court increase the amount of the bond required from WNI by $149,000.00 to a total of $200,000.00, to include the amount of fees that Brown's counsel anticipates will be incurred in this matter.

---

[1] This, despite the fact that WNI's corporate records (which it has previously complained it has not had access to) remain in storage in Redwood City, California, subject to disposal by the storage facility since WNI refuses to pay for the storage unit.

[2] See Declaration of Charles M. Brown in support of TRO, explaining the difficulties that will be encountered by WNB in attempting to utilize the Source Code without the support of the U.S. based engineers who created it.

# ARGUMENT

The purpose of a temporary restraining order ("TRO") is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974) (noting that a TRO is restricted to its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"). As such, an applicant for a TRO is required to demonstrate "immediate and irreparable injury, loss or damage." Fed. R. Civ. P. 65(b); see also *Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

The standard for issuing a TRO is similar to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). The Ninth Circuit recognizes two tests for demonstrating preliminary injunctive relief: the traditional test or an alternative sliding scale test. *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Under the traditional test, a party must show: "1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest (in certain cases)." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). Where a party demonstrates that a public interest is involved, a "district court must also examine whether the public interest favors the plaintiff." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992).

Alternatively, a party seeking injunctive relief under Fed. R. Civ. P. 65 must show either: (1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in favor of the moving party. *Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002); *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999); *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998). "'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Roe*, 134 F.3d at 1402

(quoting *United States v. Nutricology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992)); accord *Sun Microsystems*, 188 F.3d at 1119. "Thus, 'the greater the relative hardship to the moving party, the less probability of success must be shown." *Sun Microsystems*, 188 F.3d at 1119 (quoting *Nat'l Ctr. for Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984)).

Under either test, Defendant should be restrained from removing the Source Code from the State. Initially it must be kept in mind that the status quo ante is that the Source Code is located and used by WNI in California. This has been the case for more than a decade of WNI's operations. Removal of the Source Code to Brazil would be a change in the status quo.

Plaintiff has already shown a strong likelihood of recovery on the promissory notes, or at least serious questions going to the merits of his claims, and that the imminent threat of removal of the lone remaining asset of WNI to Brazil presents an immediate threat of irreparable injury. By allowing WNI access to, but restraining it from removing the original or any copy of the Source Code from the State of California, an adequate balance of WNI's claimed interest in such access is made against the significant threat of there being no assets upon which Plaintiff can collect. Finally, given the potential interests of other shareholders of WNI in not having the lone remaining asset of WNI stripped from it by its transfer out of the country without due, just and owed consideration to them, the public interest is served by directing Defendant to maintain the status quo.

In addition, or in the alternative, plaintiff requests that the Court increase the amount of the bond by Defendant by $149,000.00, to a total of $200,000.00, to cover plaintiff's anticipated attorneys' fees which are recoverable under the express terms of the promissory notes.

DATED: September 6, 2007

RYAN & STEINER
An Association of Attorneys

By: /s/ Jeffrey F. Ryan
JEFFREY F. RYAN, Attorneys for
Plaintiff CHARLES M. BROWN