Exhibit 1 to Declaration of Daniel J. Herling

**Wireless Networks, Inc.**
Rua Eng. Antonio Jovino, 200 cj 43
Sao Paulo 05727-220
SP- Brasil

September 7, 2007

To the Shareholders of Wireless Networks, Inc.:

I am writing to you in my capacity as the recently elected (July 2007) Chairman of Wireless Networks, Inc.

As you may know, I have been working in a managerial capacity with both WNI and its wholly-owned subsidiary Wireless Networks do Brasil ("WNB") since 2002. In August 2004, pursuant to the exercise of rights under an Option Agreement, acting through MRG International, an entity wholly-owned by me, I became the holder of more than two-thirds of the outstanding shares of WNI. At that time I had already invested more than US$ 3 million in WNI.

In 2002, the Company's challenge was to implement its operations in Brazil, where it had been running only on a pilot basis, since 2000. The business plan presented by Mr. Charles Brown, the then President of the Company, at that time contained totally unrealistic assumptions. As a result, neither the intended financial projections nor the expansion of the Company's operations was achieved.

Nevertheless, we were able to modify the Company's business model, charging not only the acquiring companies as proposed initially, but also the merchants, for the network services that increased the speed of their sales and decreased their communication expenses.

The revised model proved to be correct, increasing significantly the unit revenue and decreasing the Company's breakeven point. The revised model would generate additional revenues as long as more transactions were added to our network from additional acquirers. It would also prevent the Company from facing a decrease in revenues from anticipated tough price negotiations with its original clients, Visanet and Redecard, major debit and credit card processing companies in Brazil.

Today our network handles around 2.5 million transactions a month, with a monthly transaction average per merchant 5 times greater than the original target.
This new market approach demanded new solutions to be developed by the Company, but enabled us to serve important retail chains (heavy users) and to balance lower deployment rate. To service these retail chains, which maintain stores within and outside shopping malls, WNI developed solutions using broadband networks available at the merchants' sites.

This development process encountered internal problems from the beginning. It was intended that WNB would provide the market demands in order to allow WNI to develop the necessary solutions. Despite my efforts to facilitate this process between the

two teams (the Brazilian and US/WNI engineers), Mr. Brown did not cooperate, and frustrated attempts to implement the operation.

In fact, I became aware that, instead of facilitating the process within WNI and WNB, Mr. Brown was using the Company's engineers and resources to develop a new generation of systems to render the same services WNI renders to the market through a new company, unrelated to WNI, to be owned by him and some new investors. This may explain the basis for some of the difficulties.

The above is a brief explanation of the reasons that led me to call the shareholders meeting in July 2007 to elect a new Board, committed to the development of WNI's business.

Since Mr. Brown's resignation as President of the Company (two days after the election of the new Board), he has attempted to raise obstacles to thwart the success of the Company. Actions have included delaying access to the Company's corporate records and documents and commencing legal action against the Company, seeking, among other things, back wages allegedly due and payment of loan he allegedly made to the Company in 2003.

In addition to his claim for money damages, Mr. Brown requested that the Court "attach" the Source Code containing all the Company's systems and refuse access to same to both WNB and WNI. His request for attachment was based, among other things, on the specious claim that the Source Code is the only asset of the Company. In fact, WNB is an asset of WNI, and is the asset which generates the revenues to support WNI. In addition to impeding the continuing operations of WNI, Mr. Brown's tactics are costing the Company time and money.

We intend to vigorously defend against the litigation commenced by Mr. Brown. WNI's lawyers have instructed me, however, not to discuss the lawsuits in any detail. If you have questions relating to the pending legal action, please provide them to me in writing and they will be forwarded to our lawyers for a response.

Please be assured that I have and will continue to dedicate my efforts to the success of our business, for the benefit of all shareholders. I continue to believe that the prospects for WNI are very good.

I am currently reviewing the Company's financial status and intend to present to you in the near future a description of plans for the development of the Company's business. Meanwhile, feel free to contact me at the address below with any questions you may have.

Thank you,

Ruy Rothschild de Souza
ruysouza@comnect.com.br