Lina M. Brenner (SBN 191075)
Jessica E. La Londe (SBN 235744)
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-mail:  lmbrenner@duanemorris.com
         jelalonde@duanemorris.com

Daniel J. Herling
Keller & Heckman LLP
50 California Street, Suite 1500
San Francisco, California  94111
T:  (415) 277-5965
F:  (415) 277-5945
E-mail:  herling@khlaw.com


Attorneys for Defendant
WIRELESS NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| CHARLES M. BROWN,<br><br>  Plaintiff,<br><br>  v.<br><br>WIRELESS NETWORKS, INC., a Delaware corporation,<br><br>  Defendant.<br><br>WIRELESS NETWORKS, INC., a Delaware corporation,<br><br>  Counter-claimant,<br><br>  v.<br><br>CHARLES M. BROWN,<br><br>  Counter-defendant. | Case No. C-07-04301 EDL<br><br>**DEFENDANT WIRELESS NETWORKS, INC.'S COUNTERCLAIM AGAINST PLAINTIFF CHARLES M. BROWN**<br><br>Dept:    Courtroom E, 15th Floor<br>Judge:   Mag. Elizabeth D. Laporte |

Defendant and Counter-claimant Wireless Networks, Inc. ("WNI") hereby asserts its counterclaim against Plaintiff and Counter-defendant Charles M. Brown ("Brown") as follows:

## JURISDICTION

1. This court has jurisdiction over WNI's counterclaim against Plaintiff pursuant to Federal Rule of Civil Procedure 13.

2. This Court is a proper venue for this action under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to this dispute occurred in this judicial district.

## GENERAL ALLEGATIONS

3. WNI repeats, realleges, and incorporates by reference each and every allegation and averment set forth in this Counterclaim with the same force and effect as if the same were more fully set forth at length herein.

**Background**

4. WNI, a Delaware corporation, was formed in 1998 to design and develop wireless software and hardware technologies to provide secure, private, wireless packet networks for various institutions. Its target market was the financial services industry.

5. From approximately 1999 until July 13, 2007, Brown was an employee of WNI. At all relevant times herein, Brown was also a director and officer, including the President, of WNI. Brown resigned as director and officer of WNI on July 13, 2007.

6. In approximately 1999, a wholly-owned subsidiary named Wireless Networks do Brasil ("WNB") was created by WNI in Brazil. On information and belief, Brown was an officer and/or director of WNI at the time. WNB was formed to implement WNI's technology products and services to customers, initially in the Brazilian market. In approximately January of 2002, an Option Agreement, approved by the Board of Directors of WNI, including Brown, was entered into between WNI and Cruzamerica/MRG International ("MRG"). MRG was controlled by Ruy Rothschild de Souza ("Mr. de Souza"). Pursuant to this Option Agreement, MRG agreed to lend to WNI approximately $4 M (USD). In August of 2004, MRG elected to exercise the election under the Option Agreement to convert a portion of the accrued debt into 112,791 shares of WNI. This transaction resulted in MRG's becoming the majority shareholder of WNI, and

notwithstanding the election, MRG remained the largest creditor.  As a result of the conversion of debt to equity, Brown was no longer the majority shareholder of WNI.

7.   During all relevant times herein, Brown continued as a director and officer of WNI based, at least in part, on his representations that he would be able to discharge his duties and obligations as a fiduciary of WNI.  Those duties included, *inter alia*, marketing, business development, and advancing and protecting the business and financial interests of WNI.

8.   In his role as officer and director of WNI, Brown had significant fiduciary obligations to WNI.

9.   Despite Brown's continuing leadership role and his continuing duties at WNI, Brown refused to accept the fact that his percentage ownership interest in WNI decreased as a result of the exercise by MRG of its rights under the Option Agreement.  Brown resentfully, and without any basis therefor, characterized WNB's management as "micro-management" and "offensive."  Brown wrongfully treated WNB, MRG, and Mr. de Souza as enemies, and improperly treated certain assets of WNI, including for example, WNI's product source code ("Source Code"), as his personal property, to be used as leverage in his dealings with WNB.  Brown's personal feelings also "poisoned" the professional staff at both WNI and WNB.

10.   WNI, as a relatively young and growing company, was, at all relevant times, focused on developing its business, increasing its revenue, forming key contracts and relationships with third parties, conducting research and development, marketing its technology, and developing and strategizing for continued future growth and expansion.  WNI required and expected Brown, as an officer and director with fiduciary obligations to WNI, to devote a substantial portion of his time and energy in fulfilling his fiduciary duties by assisting WNI to meet these goals.

11.   Instead of meeting his obligations as a director, officer, and fiduciary of WNI, Brown wrongfully engaged in conduct that damaged, and continues to damage, WNI.  These acts include, but are not limited to, developing a separate and competing company while a director, officer, and fiduciary of WNI, and using WNI resources to do so; failing to advance the business objectives of WNI to the detriment of WNI and its client/subsidiary; using WNI funds for

unauthorized disbursements and double-payment of salary to himself; and engaging in conduct in another lawsuit to the detriment of WNI.

12. In addition to constituting a breach of the fiduciary duty Brown owed to WNI, Brown's wrongful conduct constituted a breach of his common law duty of loyalty to his employer, WNI.

**Brown's Development of Separate Company**

13. On or about March 28, 2005, Mr. de Souza learned that Brown was using his position within WNI, WNI employees, and other WNI resources to develop a separate company and product. On information and belief, this company, referred to, among other names, as MultiModal Networks ("MultiModal"), was being developed to support a next-generation wireless solution that initially would be marketed to retail stores and doctors' offices.

14. On information and belief, MultiModal was developing hardware and/or software to address market needs that were being targeted by WNI.

15. On information and belief, from at least August 2004 to February 2005, Brown spent immeasurable hours to develop MultiModal and its product, and market same, all while purporting to be working in his capacity as officer, director, and employee of WNI, while being paid a salary by WNI. Moreover, on information and belief, Brown used his position as director and officer of WNI to develop relationships with third parties for the benefit of the development and marketing of MultiModal and its product.

16. On information and belief, Brown used WNI resources, including monies, to market and develop MultiModal and its product. Specifically, on information and belief, Brown used WNI monies to purchase products that were used to market and develop MultiModal and its product; used WNI monies to reimburse himself and other employees for travel expenses related to the business of MultiModal; and used WNI email to conduct his MultiModal business. These acts diverted WNI resources, including cash, away from legitimate WNI business pursuits.

17. On information and belief, Brown recruited WNI employees to work on the marketing and development of MultiModal and its product. By so doing, Brown made it impossible for WNI employees to properly fulfill their responsibilities to WNI. On or about

1  February 18, 2005, Brown sent a memorandum to WNI employees Frank W. Sudia, Cedric
2  Berger, Joao Araujo, Dan Cochran, Bob Arasmith, and Michael Hu, asking them to execute a
3  Non-Disclosure Agreement regarding "NewCo" (eventually referred to, among other names, as
4  MultiModal).

5      18.    Not until Mr. de Souza confronted Brown with the evidence that he had been
6  developing MultiModal and its product did Brown agree that the MultiModal product was a
7  project that should be developed by WNI.  Thereafter, WNI attempted to develop the project under
8  the product name "Retail Buddy."  However, WNI never was able to complete this project because
9  Brown refused to cooperate in its development, causing WNI damages in an amount to be proven
10 at trial.

11     19.    In addition, from at least August 2004 to February 2005, WNI incurred expenses
12 unrelated to WNI's product development; these expenses were never recaptured by WNI.  In
13 addition, during this time period, WNI suffered lost opportunity costs for the time its employees,
14 including Brown, spent working on marketing and developing MultiModal and its product, when
15 such time and energy should have been devoted to WNI's business.  WNI has suffered damages
16 relating to lost resources and employee time wrongfully diverted by Brown, in an attempt to
17 compete with the very business, WNI, to which Brown owed his undivided loyalty and fiduciary
18 duties.

19 **Brown's Failure to Serve WNI's Business Interests**

20     20.    From at least 2002 until his resignation on July 13, 2007, Brown consistently took
21 actions aimed at undermining WNI's business relationships, and thereby thwarted WNI's business
22 objectives.

23     21.    For example, Brown consistently treated WNB as an enemy and competitor, rather
24 than as the sole revenue-generator for WNI and as WNI's wholly-owned subsidiary, as more fully
25 discussed above. In addition, WNB is directed by WNI and, in fact, according to its corporate
26 documents, WNB is directed by one director appointed by the WNI board.  The relationship
27 between WNI and WNB is also one of supplier and client; WNB is responsible for the operation
28 of the business in Brazil, and WNI is responsible for the development and support of that

DM1\1227153    5
DEFENDANT WIRELESS NETWORKS, INC.'S COUNTERCLAIM    CASE NO. 07-4301 EDL
AGAINST PLAINTIFF CHARLES M. BROWN

operation. The interests of the parent and subsidiary are closely aligned, and Brown's negative treatment of WNB directly harmed WNI.

22. From at least 2002 until his resignation on July 13, 2007, Brown indefensibly continued to treat WNB as an enemy and competitor, to the extreme detriment of WNI. For example, he refused to develop new features in the WNI technology to address market needs and new types of transactions, prevented WNI from rendering new services to the market, and paid employees who did not add value to WNI. Brown also caused a myriad of delays, to the prejudice of WNB – WNI's sole revenue-generator, wholly-owned subsidiary, and client.

23. In addition, Brown contended that WNB could not legally use the Source Code, which was at all relevant times an asset of WNI in which Brown had no proprietary interest, without a licensing agreement. There was no legal basis for this position, and WNI at all relevant times was entitled to permit use of the Source Code by its subsidiary. Indeed, on information and belief, the implementation of the licensing agreement would have allowed WNB to inject revenue into WNI.

24. Moreover, whatever the purpose of the licensing agreement, Brown himself prevented the execution of a licensing agreement between WNI and WNB, and would not allow same except on terms mandated by him. WNB was at all times willing to execute such licensing agreement, and engaged in substantive discussions concerning its terms. After several such discussions about executing a license agreement whose wording would be appropriate under both Brazilian and U.S. laws, Brown refused to sign such an agreement. Brown's failure to cooperate in implementing such licensing agreement was detrimental to the business interests of WNI.

25. Brown also refused to provide necessary support and information to the engineers in Brazil, causing WNB problems with running its business, to the detriment of both WNB and WNI.

26. As a result of Brown's various actions, including but not limited to those which are delineated herein, WNB – WNI's sole revenue-generator, wholly-owned subsidiary, and client – was unable to grow its operation. Opportunities for an estimated 20 million transactions were lost, representing a total of at least $1.3 million loss in revenue. In addition, WNB was forced to incur

additional expenses, including engineering costs, to provide operational support that WNI should have provided, but failed to provide, over a 2 year period. These damages amounted to at least $120,000. These damages to WNB had the effect of also damaging WNI, WNB's parent company, recipient of WNB monies, and supplier to WNB.

### Brown's Other Actions to the Detriment of WNI

27. On information and belief, Brown failed to implement internal corporate controls in WNI that would have ensured monies were being paid and accountings for same were being provided. As a result, WNI regularly received monies from WNB, which were spent, with little to no management accountability of the application of the funds. Accounting (and payroll) records of WNI, which Brown oversaw at all relevant times, are opaque. The payees of much of the funding WNI received is unclear, and upon information and belief, some of these funds were improperly diverted by Brown for his own benefit.

28. Specifically, on information and belief, Brown used WNI monies for unauthorized disbursements and/or expenditures, including various unauthorized and unsupported withdrawals from WNI's "petty cash," as well as writing company checks to himself for various unauthorized and unsupported amounts.

29. Further, on information and belief, Brown paid himself his WNI salary twice at various points and times during his employment with WNI.

### Brown's Actions to WNI's Detriment in Separate Legal Proceeding

30. In a now-concluded lawsuit entitled *Hagan v. Wireless Networks Inc.*, Case No. CIV 464141, filed in the San Mateo Superior Court, WNI's former attorney, James Hagan, filed a complaint against WNI on June 29, 2007, alleging unpaid legal bills.

31. On July 6, 2007, while Brown was still an officer and director of WNI, he volunteered to be deposed by Mr. Hagan in the *Hagan* lawsuit, without notifying the WNI board of directors and without representation of counsel. During this deposition, Brown made various statements allegedly on behalf of WNI, that were extremely harmful and detrimental to WNI, and which Brown had no authority to make. Specifically, among other statements, Brown stated during the deposition that WNI held certain Source Code of value, that there was no reason

Mr. Hagan's bills should not be paid, and that WNI had no legal defense that would justify the nonpayment of the promissory notes issued to Brown.

32. Brown volunteered for the deposition without authorization from WNI, and attended the deposition without an attorney present. He made several improper statements, including offering legal opinions about various issues related to WNI. Moreover, Brown volunteered for this deposition knowing that he was about to resign from WNI and, on information and belief, knowing that he was going to file a lawsuit against WNI. Therefore, Brown submitted to examination in collusion with Mr. Hagan and with the purpose of making self-serving statements and statements intentionally aimed at harming WNI.

33. Based on Brown's deposition testimony, on July 11, 2007, Mr. Hagan obtained a writ of attachment against WNI with respect to the aforementioned Source Code. This Source Code sat in the Superior Court for San Mateo until approximately September 21, 2007. Without the Source Code, WNI could not properly or efficiently operate its business, resulting in damages in an amount to be proven at trial.

**FIRST CAUSE OF ACTION**
**(Breach of Fiduciary Duty/Duty of Loyalty)**

34. WNI repeats, realleges, and incorporates by reference each and every allegation and averment set forth in this Counterclaim with the same force and effect as if the same were more fully set forth at length herein.

35. At all times mentioned herein, by virtue of his position as director, officer, and fiduciary of WNI, Brown was an agent and/or fiduciary of WNI and owed fiduciary obligations, including but not limited to the duty of loyalty, to WNI.

36. On information and belief, and as set forth in detail herein, without limitations:

(a) Brown was developing and marketing his own company while an officer, director, and fiduciary of WNI, and receiving a paycheck for same, using WNI monies, employees, and other resources;

(b) Brown continually undermined WNI's business prospects and efforts, and failed to take actions to develop and strengthen WNI;

      (c)    Brown used WNI monies to make unauthorized and unsupported disbursements, including, on information and belief, paying his salary twice at various times during his WNI employment; and

      (d)    Brown participated in another legal proceeding to the detriment of WNI.

37. As agent and/or fiduciary of WNI, Brown had a duty to deal fairly with WNI; to refrain from developing another, competing business while a director, officer, and fiduciary of WNI; to advance the business interests of WNI; to not use WNI funds for other purposes, including double-payment of his salary; and to not engage in a legal proceeding to the detriment of WNI.

38. By virtue of the wrongful acts of Brown, as discussed in detail *supra*, all without WNI's consent, Brown has breached his fiduciary obligations and duty of loyalty to WNI.

39. As a direct and proximate result of the wrongful acts of Brown identified herein, WNI has been damaged in an amount to be proven at trial.

40. By breaching his fiduciary obligations to WNI, Brown is guilty of oppression, fraud, and/or malice within the meaning of California Civil Code § 3294, entitling WNI to punitive or exemplary damages in an amount appropriate to punish Brown and to make an example of him to the community.

**SECOND CAUSE OF ACTION**
**(Intentional Misrepresentation)**

41. WNI repeats, realleges, and incorporates by reference each and every allegation and averment set forth in this Counterclaim with the same force and effect as if the same were more fully set forth at length herein.

42. Brown made the following false representations. Brown represented to WNI that he was discharging his duties and obligations as a fiduciary of WNI, including, *inter alia*, marketing, business development, and advancing and protecting the business and financial interests of WNI.

43. When Brown made these representations, he knew them to be false in that he was not devoting, and did not intend to devote, his time or energy to fulfilling his obligations to WNI.

DM1\1227153      9
DEFENDANT WIRELESS NETWORKS, INC.'S COUNTERCLAIM      CASE NO. 07-4301 EDL
AGAINST PLAINTIFF CHARLES M. BROWN

44.     Brown made these representations with the intention of inducing WNI to act in reliance on these representations, in that WNI trusted Brown to act and fulfill his duties as an officer, director, and fiduciary of WNI.

45.     In justifiable reliance on, and as a proximate result of, Brown's conduct, omissions, and representations, WNI was induced to and did trust Brown to perform his duties and obligations as WNI's officer, director, and fiduciary.

46.     WNI justifiably relied on Brown's representations because he was officer, director, employee, and shareholder, and, as such, occupied a role of trust and confidence.

47.     As a result of Brown's actions, omissions, and representations, WNI suffered and continues to suffer damages in an amount to be proven at trial.

48.     Brown's conduct as set forth above was willful, fraudulent, and done in a conscious disregard for WNI's rights. Therefore, WNI is entitled to punitive damages in an amount subject to proof at trial.

**THIRD CAUSE OF ACTION**
**(Negligent Misrepresentation)**

49.     WNI repeats, realleges, and incorporates by reference each and every allegation and averment set forth in this Counterclaim with the same force and effect as if the same were more fully set forth at length herein.

50.     Brown made the following false representations.  Brown represented to WNI that he was discharging his duties and obligations as a fiduciary of WNI, including, *inter alia*, marketing, business development, and advancing and protecting the business and financial interests of WNI.

51.     When Brown made these representations, he had no reasonable ground for believing them to be true in that he was not devoting, and did not intend to devote, his time or energy to fulfilling his obligations to WNI.

52.     Brown made these representations with the intention of inducing WNI to act in reliance on these representations, in that WNI trusted Brown to act and fulfill his duties as an officer, director, and fiduciary of WNI.

53. In justifiable reliance on, and as a proximate result of, Brown's conduct, omissions, and representations, WNI was induced to and did trust Brown to perform his duties and obligations as WNI's officer, director, and fiduciary.

54. WNI justifiably relied on Brown's representations because he was officer, director, employee, and shareholder, and as such, occupied a role of trust and confidence.

55. As a result of Brown's actions, omissions, and representations, WNI suffered and continues to suffer damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Conversion)

56. WNI repeats, realleges, and incorporates by reference each and every allegation and averment set forth in this Counterclaim with the same force and effect as if the same were more fully set forth at length herein.

57. At all times herein mentioned, and in particular on or before each unlawful disbursement, WNI was, and still is, entitled to possession of the monies which Brown intentionally and unlawfully disbursed and/or accepted for his benefit, without WNI's consent, as follows without limitation on information and belief:

   (a) WNI monies used to develop and/or market MultiModal and/or its product;

   (b) WNI monies Brown disbursed and/or spent for non-WNI matters, including various unsupported withdrawals from WNI's "petty cash," as well as writing company checks to himself for various unsupported amounts and alleged expenses; and

   (c) WNI monies Brown used to pay himself his WNI salary twice at various points and times during his employment with WNI.

58. As a proximate result of Brown's conversion of the above-mentioned monies, WNI has been deprived of use of its funds, all to WNI's damage in an amount to be proven at trial, in addition to accrued interest.

59. In doing the acts herein alleged, Brown acted with oppression, fraud, and malice, and WNI is entitled to punitive damages.

///

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment/Constructive Trust)

60. WNI repeats, realleges, and incorporates by reference each and every allegation and averment set forth in this Counterclaim with the same force and effect as if the same were more fully set forth at length herein.

61. At all times herein mentioned, a confidential relationship existed between WNI and Brown based on, *inter alia*, Brown's position as officer, director, and fiduciary of WNI.

62. At all times herein mentioned, WNI believed implicitly in the integrity and truthfulness of Brown, and reposed absolute trust and confidence in him.

63. On information and belief, at various times herein mentioned, Brown disbursed and/or accepted unauthorized and un-ratified funds from WNI's accounts for his own use and benefit, as follows:

   (a)   WNI monies used to develop and/or market MultiModal and/or its product;

   (b)   WNI monies Brown disbursed and/or spent for non-WNI matters, including various unsupported withdrawals from WNI's "petty cash," as well as writing company checks to himself for various unsupported amounts and alleged expenses; and

   (c)   WNI monies Brown used to pay himself his WNI salary twice at various points and times during his employment with WNI.

64. WNI does not know the personal account number(s) in which Brown deposited the sums. The disbursements were made by means of false and fraudulent withdrawal from WNI's accounts, and were misappropriated and converted to Brown's personal use and possession without WNI's knowledge, consent, approval, authorization, or ratification.

65. Brown has received this amount, to be proven at trial, in violation of the confidential relationship between WNI and Brown as alleged above, and by virtue of Brown's wrongful acts of conversion.

66. By virtue of Brown's violation of the relationship of trust and confidence then existing between WNI and Brown and by virtue of Brown's wrongful acts of conversion, Brown holds an amount, to be proven at trial, as constructive trustee for WNI's benefit.

67. As a proximate result of Brown's conversion of the above-mentioned monies, WNI has been deprived of use of its funds, all to WNI's damage in an amount to be proven at trial, in addition to accrued interest.

68. In doing the acts herein alleged, Brown acted with oppression, fraud, and malice, and WNI is entitled to punitive damages.

### SIXTH CAUSE OF ACTION
(Declaratory Relief)

69. WNI repeats, realleges, and incorporates by reference each and every allegation and averment set forth in this Counterclaim with the same force and effect as if the same were more fully set forth at length herein.

70. An actual controversy has arisen and now exists between WNI and Brown concerning their respective rights and duties in that WNI contends, without limitation, that WNI is owed monies, in an amount to be proven at trial, from Brown's unauthorized and un-ratified disbursements of WNI funds, including, *inter alia*, those arising from expense reimbursements without proper documentation or ratification; funds spent in pursuit of other business ventures; and payments made by Brown to himself for double-payment of salary.

71. On information and belief, Brown disputes that he owes any monies to WNI.

72. WNI desires a judicial determination and declaration as to the recovery of funds.

73. A judicial declaration that Brown is not entitled to any monies and that these monies are WNI's is necessary and appropriate at this time under the circumstances in order that WNI may ascertain its right to the monies for business purposes.

**WHEREFORE**, WNI prays for judgment against Brown as follows:

1. Under the First, Second, Third, Fourth, and Fifth Causes of Action, for actual damages according to proof, in addition to interest;

2. Under the First, Second, Fourth, and Fifth Cause of Action, for punitive or exemplary damages;

///

3. Under the Sixth Cause of Action, for a declaration regarding WNI's rights to certain sums;

4. Attorneys' fees and costs; and

5. Such other relief as this Court deems appropriate and reasonable.

Dated: December 6, 2007        **DUANE MORRIS LLP**

By: /s/ Lina M. Brenner
Lina M. Brenner
Jessica E. La Londe
Attorneys for Defendant
WIRELESS NETWORKS, INC.