# EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

THE HAGAN LAW FIRM, INC.,

       Plaintiff,

 -vs-                              Case No. CIV 464141

WIRELESS NETWORKS, INC.,

       Defendant.

_____/

**CERTIFIED COPY**

DEPOSITION OF CHARLES BROWN

Friday, July 6, 2007

Pages 1 to 37

Reported By:  D. Kathrine Hall, RPR, CSR No. 11426



GROSSMAN & COTTER
CERTIFIED COURT REPORTERS
Comp-U-Scripts       Weber & Volzing

*Mailing Address:*

117 S. California Avenue, #D-201 • Palo Alto, CA 94306    465 California Street • San Francisco, CA 94104
Phone 650.324.1181   Fax 650.324.4609                    Phone 415.395.9330   Fax 415.395.9254

```
 1                    A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFF:
 4            THE HAGAN LAW FIRM
 5            BY:  JAMES R. HAGAN, ATTY. AT LAW
 6            350 Cambridge Avenue, Suite 150
 7            Palo Alto, California 94306
 8            (650) 322-8498
 9
10   THE WITNESS:
11            CHARLES BROWN
12            President, Wireless Networks, Inc.
13            55 Skylonda Drive
14            Woodside, California 94062
15
16
17
18
19
20
21
22
23
24
25
                                                            2
```

CHARLES BROWN

1                        --oOo--

2          BE IT REMEMBERED that, pursuant to agreement, and

3  on Friday, July 6, 2007, commencing at the hour of 1:22

4  p.m. thereof, at the Law Offices of THE HAGAN LAW FIRM,

5  350 Cambridge Avenue, Suite 150,

6  Palo Alto, California, before me, D. KATHRINE HALL, a

7  Certified Shorthand Reporter, there personally appeared

8                      CHARLES BROWN,

9  called as a witness by the Plaintiff, and who, being duly

10 sworn, was thereupon examined and testified as hereinafter

11 set forth.

12                EXAMINATION BY MR. HAGAN:

13     Q.   Mr. Brown, please state your full name and your

14 residence address for the record.

15     A.   My name is Charles Michael Brown, 55 Skylonda

16 Drive, Woodside, California 94062.

17     Q.   And you're appearing here today, Mr. Brown, as

18 the representative of Wireless Networks, Inc.?

19     A.   Yes.

20     Q.   And what is your position with Wireless Networks?

21     A.   I am the president, secretary and treasurer.

22     Q.   In what state is Wireless Networks, Inc.,

23 organized?

24     A.   Delaware.

25     Q.   As far as you know, at the present time does

```
 1  Wireless Networks, Inc. -- does it have a lawyer?  Is it
 2  represented by any attorney?
 3      A.   No.
 4      Q.   Mr. Brown, I'm going to hand you this document
 5  and we'll mark it as an exhibit.
 6           Have you seen this document that I handed to you
 7  which purports to be a complaint?
 8      A.   Yes.
 9      Q.   And did you also receive this summons?
10      A.   Yes.
11           MR. HAGAN:  Could we have these marked for
12  exhibits and have these --
13           (Plaintiff's Exhibits Nos. 1 and 2 were marked
14  for identification.)
15  BY MR. HAGAN:
16      Q.   Mr. Brown, I hand you a document called a "Notice
17  and Acknowledgement of Receipt."
18           Have you seen that document before?
19      A.   Yes.
20      Q.   Is that your signature at the bottom right-hand
21  side of the page --
22      A.   Yes.
23      Q.   -- indicating that you received the Summons and
24  Complaint and you sent this back on July 2nd?
25      A.   Yes.
```

6

CHARLES BROWN

1  Q. And you're appearing voluntarily here today,
2  Mr. Brown?
3  A. Yes.
4  Q. How long have you been associated with
5  Wireless Networks, Inc., Mr. Brown?
6  A. Since its inception.
7  Q. Were you one of the persons who incorporated the
8  company?
9  A. Yes. It would have been in 1998 originally as a
10 California corporation, subsequently reincorporated in
11 Delaware in 1999.
12 Q. And have you been the president of
13 Wireless Networks, Inc., throughout that period of time,
14 from 1999 to present day?
15 A. Yes.
16 Q. Are you fully familiar with all the business and
17 conduct of the company during that entire time?
18 A. Yes.
19 Q. And was the business of the company managed under
20 your direction and control during that entire period of
21 time from 1991 to present?
22 A. Yes.
23 Q. Does Wireless Networks, Inc., have a number of
24 shareholders beside yourself?
25 A. Yes.

8

CHARLES BROWN

1  California.
2    Q.  Is the storage facility about as big as this room
3  or smaller?
4    A.  It's about as big as this room, yeah.
5    Q.  Does the inventory more or less fill the storage
6  facility?
7    A.  More or less.
8    Q.  Could you describe the source code that you
9  mentioned as an asset of WNI, Wireless Networks, Inc.?
10   A.  Yes.  This is the computer system and program
11 code that was developed by the company over a period of
12 several years to provide the wireless financial
13 transaction service mentioned before.
14       It consists of computer code, computer system
15 code for wireless devices, and network code for
16 communicating with those devices in a secure manner and
17 parsing the data in a customized fashion for delivery to
18 the financial institutions in Brazil.
19   Q.  In what physical form does this source code
20 exist?
21   A.  It exists on disk media.
22   Q.  Like a CD-ROM?
23   A.  Yes.
24   Q.  And about how many CD-ROMs are required to hold
25 the source code?

15

1   A. There are three.
2   Q. Is there any paperwork or documentation that goes
3   with these three CD-ROM disks to fill out the source code?
4   A. Yes.
5   Q. What kind of paper records or documents are
6   involved for that?
7   A. Well, it's a -- one of the disks contains a
8   documentation of the architecture of the service and
9   system, and explanation for the operation of the code.
10  Q. It's all on one of the disks?
11  A. Yes.
12  Q. It's not in a notebook?
13  A. Correct.
14  Q. So if I understand your testimony, what you refer
15  to as the source code is embodied in three CD-ROM disks --
16  A. Yes.
17  Q. -- which are about 6 inches wide by 6 inches tall
18  and a 10th of an inch thick each?
19  A. Yeah. Actually DVDs, disks, standard cylinder
20  shaped.
21  Q. They're easily moved and delivered from place to
22  place?
23  A. Yes.
24  Q. With respect to the inventory, do you have any
25  idea of what the fair market value of that inventory might

16

```
 1  be if it were sold at, say, an auction or in some other
 2  way that would seek the fair market value thereof?
 3       A.   Well, they're specialized products.  I would --
 4  minimal.  It would be electronic surplus.  If they were to
 5  sell by the pound --
 6       Q.   I see.  About how much per pound?
 7            A few cents?
 8       A.   Yes.
 9       Q.   Is the source code valuable to WNI?
10       A.   No.
11       Q.   Has WNI invested a lot of money in the source
12  code?
13       A.   Well, yes.
14       Q.   About how much money was invested in the source
15  code, to create the source code?
16       A.   Millions of dollars.
17       Q.   Is the source code valuable to WNB?
18       A.   Yes.
19       Q.   If the source code were to be put on the market
20  for sale, do you have any idea who the potential buyers
21  might be?
22       A.   No.
23       Q.   Would WNB be a potential buyer?
24       A.   Yes.
25       Q.   Would the source code be of substantial value to
```

17

```
 1  nonpayment of the accrued salaries to you and the other
 2  employee?
 3      A.  No.
 4      Q.  Are you aware of any legal defense that
 5  Wireless Networks, Inc., has that would justify the
 6  nonpayment of the bills to the Hagan Law Firm?
 7      A.  No.
 8      Q.  Who is the other employee to whom $5,000 is owed?
 9      A.  Joao Araujo.
10      Q.  Where is he located?
11      A.  He's in Boca Raton, Florida.
12      Q.  Is there any reason that you are aware of why he
13  should not be paid the amount that's owed to him by
14  Wireless Networks, Inc.?
15      A.  No.
16      Q.  The next item on this list is "Crew Software"
17  listed for $2,000.  What is that for?
18      A.  It's for servers, e-mail services, web services.
19  Basic data communication services provided to the company
20  on a monthly basis.
21      Q.  Are you aware of any reason for a legal defense
22  that would justify the nonpayment of that billing to
23  Crew Software?
24      A.  No.
25      Q.  The next line item here is "Cedric Berger," for
```

25

1   I, D. KATHRINE HALL, duly authorized to
2   administer oaths pursuant to Section 2093(b) of the
3   California Code of Civil Procedure, do hereby certify:
4   That the witness in the foregoing deposition was by me
5   duly sworn to testify the truth in the within-entitled
6   cause; that said deposition was taken at the time and
7   place therein cited; that the testimony of the said
8   witness was reported by me and was hereafter transcribed
9   under my direction into typewriting; that the foregoing is
10  a complete and accurate record of said testimony; and that
11  the witness was given an opportunity to read and correct
12  said deposition and to subscribe the same.
13      Should the signature of the witness not be
14  affixed to the deposition, the witness shall not have
15  availed himself or herself or the opportunity to sign or
16  the signature has been waived.
17      I further certify that I am not of counsel, nor
18  attorney for any of the parties in the foregoing
19  deposition and caption named, nor in any way interested in
20  the outcome of the cause named in said caption.
21      DATED: July 18, 2007
22
23  _____
    D. KATHRINE HALL
24  RPR, CSR NO. 11426
25

37