1  JEFFREY F. RYAN, ESQ. SBN 129079
   RYAN & STEINER
2  An Association of Attorneys
   455 North Whisman Road, Suite 200
3  Mountain View, CA 94043-5721
   Telephone:   (650) 691-1430
4  Facsimile:   (650) 968-2685
5
   Attorneys for Plaintiff,
6  CHARLES M. BROWN

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12 | CHARLES M. BROWN,                        | Case No.: C07-4301 EDL

13 |              Plaintiff,                    | **NOTICE OF MOTION AND MOTION**
                                                 **FOR LEAVE TO AMEND COMPLAINT;**
14 |         vs.                                 **MEMORANDUM OF POINTS AND**
                                                 **AUTHORITIES THEREOF**
15 | WIRELESS NETWORKS, INC., a Delaware
16 | corporation, RUY ROTHSCHILD DE           | **Date:    April 15, 2008**
   | SOUZA, WIRELESS NETWORKS DO               | **Time:    9:00 a.m.**
17 | BRAZIL, LTDA, and MRG                     | **Dept.:   15th Floor, Courtroom E**
   | INTERNATIONAL, INC.,                      | **Judge:   Mag. Elizabeth D. LaPorte**
18
   |              Defendants.
19

20 TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

21        PLEASE TAKE NOTICE THAT on April 15, 2008, at 9:00 a.m. in courtroom E of the

22 above-titled court, located at 450 Golden Gate Avenue, San Francisco, California, plaintiff

23 Charles M. Brown will and hereby does move the court, pursuant to Rules 15, 20, and 21 of the

24 Federal Rules of Civil Procedure, for leave to file an amended complaint adding defendant

25 parties.

26        This motion is based upon this notice, the accompanying memorandum of points and

27 authorities, and such further evidence and/or argument as the Court may entertain.

28

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides, in pertinent part, that, "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."[1]   Rule 21 provides, in pertinent part, "On motion or on its own, the court may at any time, on just terms, add or drop a party." Rule 20(a)(2) provides for permissive joinder of defendants into one action if:

    (A)    any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

    (B)    any question of law or fact common to all defendants will arise in the action.

The liberal standards upon which amendments are to be granted when leave of court is required under Rule 15 should guide the court on motions to add parties under Rule 21. Kaminsky v Abrams, 41 F.R.D. 168, 10 F.R. Serv. 2d 251 (SDNY 1966).  While, as is the case here, a motion to amend complaint to add party may also implicate Fed. R. Civ. P. 20 and Fed. R. Civ. P. 21 joinder rules (i.e., once responsive pleading has been served, the standard for adding party is the same regardless of rule under which motion is made, that is, decision lies within discretion of court.   Anderson v. USAA Cas. Ins. Co. 218 F.R.D. 307 (D. Col. 2003).

Here, plaintiff Charles M. Brown seeks, pursuant to these Rules, leave to amend his complaint to add as parties-defendant one individual (Mr. de Souza) and two entities (Wireless Networks do Brasil and MRG International Inc), each of whom has been certified to this court by defendant WNI as an interested person or entity under local Rule 3-16.

Plaintiff has alleged in the current complaint, and in his proposed amended complaint (attached hereto as Exhibit "A"), that:

Plaintiff is informed and believes and thereon alleges that Defendant WNI is, and beginning in 2004 has all times herein mentioned was, the alter ego of Defendant Ruy Rothschild de Souza ("de Souza"), a citizen and resident of Brazil, and of de

1   Souza's other controlled entities defendant Wireless Networks do Brazil, LTDB

2   ("WNB"), a Brazilian subsidiary of WNI, and Defendant MRG International, Inc.

3   ("MRG"), a business entity of unknown form which is neither a citizen or resident

4   of the State of California.  Plaintiff is informed and believes, and thereon alleges,

5   that here exists, and at all times herein mentioned has existed, a unity of interest

6   and ownership between defendant WNI and WNB, MRG and de Souza, such that

7   any separateness has ceased to exist, in that de Souza completely controlled,

8   dominated, managed, and operated the corporate entities and intermingled the

9   assets of each to suit the convenience of de Souza by transferring and allowing

10  royalty free use of the fixed assets of defendant WNI by WNB in violation of

11  written agreements between WNI and WNB, and by withholding payments due

12  WNI from WNB without justification thereby increasing WNI's debt to MRG in

13  order to allow de Souza to increase his ownership of WNI through option

14  agreements with MRG allowing conversion of debt into stock, in order to evade

15  payment of the obligations owed to creditors of WNI.

16  In short, plaintiff is informed and believes, and has thereon alleged, that de Souza as the

17  effective principal of each of the three entities, has orchestrated the finances and operations of

18  the entities without regard to their separateness, corporate formalities, or the separate interests of

19  the entities to maximize his direct and beneficial personal ownership of the entities at the

20  expense of the corporations, and particularly, WNI.

21  Although it is the general rule that a corporation is an entity separate and distinct from its

22  stockholders, it is also equally well settled that both law and equity, when necessary to

23  circumvent fraud, will protect the rights of third persons and accomplish justice, disregard the

24  distinct existence of a corporation and its stockholders and treat them as identical. Erkenbrecher

25  v. Grant 187 Cal. 7, 10-11, 200 P. 641 (1921). The term "alter ego" describes a doctrine, the

26  application of which results in either the obligations of a corporation being treated as those of its

27

28

[1] As noted in the Joint Case Management Conference Statement, Defendant intends oppose this motion.

1  equitable owners[2] or the obligations of the equitable owners being treated as those of the
2  corporation.[3] In order to avoid an abuse of the corporate privilege, the courts will look through
3  the forms and behind the corporate entity involved to deal with the situation as justice may
4  require. People v. Clauson 231 Cal. App. 2d 374, 379, 41 Cal. Rptr. 691 (1964); see also Civ.
5  Code § 3528 (law respects form less than substance).

6  To this end, because defendant WNI derives its income from WNB, and de Souza
7  controls WNB, de Souza was able to have WNB withhold payments from WNI, which WNI
8  needed to pay obligations to MRG, thereby allowing MRG to seize control of WNI by
9  converting debt into equity. This same type of bad faith scheme potentially renders WNI
10 judgment proof in this action, leaving plaintiff without a remedy if the separateness of the
11 entities is honored.

12 Accordingly, plaintiff should be allowed to amend the complaint to name these additional
13 parties as defendants.

14
15 Dated: March 4, 2008                    RYAN & STEINER
16
17 By:___/s/ Jeffrey F. Ryan_____
   Jeffrey F. Ryan
18 Attorneys for Counter-defendant
   CHARLES M. BROWN
19
20
21
22
23
24
25
26
27 [2] See, e.g., Minton v. Cavaney, 56 Cal. 2d 576, 579, 15 Cal. Rptr. 641, 364 P.2d 473 (1961); Riddle v. Leuschner, 51 Cal. 2d 574, 580, 335 Cal. 2d 107 (1959).
28 [3] See, e.g., Wenban Estate, Inc. v. Hewlett 193 Cal. 675, 696-697, 227 P. 723 (1924).

# EXHIBIT A

1   JEFFREY F. RYAN, ESQ. SBN 129079
    RYAN & STEINER
2   An Association of Attorneys
    455 North Whisman Road, Suite 200
3   Mountain View, CA 94043-5721
4   Telephone:    (650) 691-1430
    Facsimile:    (650) 968-2685
5
    Attorneys for Plaintiff,
6   CHARLES M. BROWN

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  CHARLES M. BROWN,                    Case No.: C07-4301 EDL

13              Plaintiff,               **FOURTH AMENDED COMPLAINT**

14       vs.                            **[JURY TRIAL DEMANDED]**

15  WIRELESS NETWORKS, INC., a Delaware
16  corporation, RUY ROTHSCHILD DE
    SOUZA, WIRELESS NETWORKS DO
17  BRAZIL, LTDA, and MRG
    INTERNATIONAL, INC.,
18
                Defendants.
19

20

21

22

23

24

25

26

27

28

                                        1
                          FOURTH AMENDED COMPLAINT
    BROWN v. WIRELESS NETWORKS, INC.              CASE NO. C07-4301 EDL

1    Plaintiff, Charles M. Brown, alleges:

2                                    PARTIES

3    1.    Plaintiff Charles M. Brown ("Brown" or "Plaintiff") is, and at all times relevant

4    herein was, a citizen and resident of the State of California.

5    2.    Defendant Wireless Networks, Inc. ("Defendant" or "WNI") is a Delaware

6    corporation.  Plaintiff is informed and believes and thereon alleges that WNI's principal place of

7    business is in Brazil.

8    3.    Plaintiff is informed and believes, and thereon alleges that Defendant WNI is, and

9    beginning in 2004 has all times herein mentioned was, the alter ego of Defendant Ruy Rothschild

10   de Souza ("de Souza"), a citizen and resident of Brazil, and of de Souza's other controlled

11   entities defendant Wireless Networks do Brazil, LTDB ("WNB"), a Brazilian subsidiary of WNI,

12   and Defendant MRG International, Inc. ("MRG"), a business entity of unknown form which is

13   neither a citizen or resident of the State of California.  Plaintiff is informed and believes, and

14   thereon alleges, that here exists, and at all times herein mentioned has existed, a unity of interest

15   and ownership between defendant WNI and WNB, MRG and de Souza, such that any

16   separateness has ceased to exist, in that de Souza completely controlled, dominated, managed,

17   and operated the corporate entities and intermingled the assets of each to suit the convenience of

18   de Souza by transferring and allowing royalty free use of the fixed assets of defendant WNI by

19   WNB in violation of written agreements between WNI and WNB, and by withholding payments

20   due WNI from WNB without justification thereby increasing WNI's debt to MRG in order to

21   allow de Souza to increase his ownership of WNI through option agreements with MRG

22   allowing conversion of debt into stock, in order to evade payment of the obligations owed to

23   creditors of WNI.

24                            JURISDICTION AND VENUE

25   4.    This action was originally commenced in the Superior Court of California,

26   County of San Mateo, and was removed to this Court by WNI under 28 U.S.C. § 1441.  Subject

27   matter jurisdiction in this matter is premised upon defendant's allegations of diversity of

28   citizenship between WNI and Brown under 28 U.S.C. § 1332.  Venue is based upon 28 U.S.C. §

1 | 1391(a)(2) and (3) in that a substantial part of the events or omissions giving rise to the claim

2 | occurred within this judicial district, and having appeared in the state court, the defendants, being

3 | essentially a single entity, were subject to personal jurisdiction within the district at the time the

4 | action was commenced.  Assignment to this Division is pursuant to L.R. 3-2.

5 | <div align="center">GENERAL ALLEGATIONS</div>

6 |         5.      At all times relevant herein prior to July 13, 2007, Brown was an employee of

7 | WNI.

8 | <div align="center">FIRST CLAIM FOR RELIEF - ACCOUNT STATED</div>

9 |         6.      On or about December 31, 2004, at Palo Alto, California, an account was stated in

10 | writing by and between plaintiff and defendant and on such statement a balance of $17,000 in

11 | unpaid wages was found due to plaintiff from defendant. Defendant agreed to pay to plaintiff

12 | said balance at its board meeting on or about April 19, 2005. [A copy of the December 31, 2004,

13 | account is attached hereto as Exhibit "A" and made a part hereof.  A copy of the board minutes

14 | of April 19, 2005, is attached hereto as Exhibit "B" and made a part hereof.]

15 |         7.      Although demanded by plaintiff from defendant, neither all nor any part of the

16 | agreed balance has been paid.

17 |         8.      There is now due, owing, and unpaid from defendant to plaintiff the sum of

18 | $17,000, together with pre-judgment interest thereon at the legal rate of interest from and after

19 | December 31, 2004.

20 | <div align="center">SECOND CLAIM FOR RELIEF – BREACH OF WRITTEN CONTRACT</div>

21 |         9.      On or about June 30, 2001, defendant became indebted to plaintiff in the principal

22 | amount of $71,892.29, pursuant to a promissory note bearing interest at the rate of nine percent

23 | (9%) per annum until fully paid.  A true and correct copy of this promissory note is attached

24 | hereto as Exhibit "C" and made a part hereof.  Exhibit "C" further provided that in the event of a

25 | failure of full and timely payment, the entire unpaid principal became immediately due and

26 | payable including all costs and expenses, including attorneys fees, incurred by plaintiff in

27 | collection on the note.

28 |

1      10.    Exhibit "C" was approved and ratified and defendant's payment obligations

2  renewed at defendant's board meeting on or about April 19, 2005. [Exhibit "B"].

3      11.    WNI has, despite demand therefor, failed and refused to make full payment on

4  Exhibit "C", such that the principal amount of $25,100.91 remains due and owing, plus interest

5  at 9% from its inception, plus attorneys fees.

6  <center>THIRD CLAIM FOR RELIEF – BREACH OF WRITTEN CONTRACT</center>

7      12.    On or about January 30, 2003, defendant became indebted to plaintiff in the

8  principal amount of $2,000.00, pursuant to a promissory note bearing interest at the rate of nine

9  percent (9%) per annum until fully paid. A true and correct copy of this promissory note is

10  attached hereto as Exhibit "D" and made a part hereof. Exhibit "D" further provided that in the

11  event of a failure of full and timely payment, the entire unpaid principal became immediately due

12  and payable including all costs and expenses, including attorneys fees, incurred by plaintiff in

13  collection on the note.

14      13.    Exhibit "D" was approved and ratified and defendant's payment obligations

15  renewed at defendant's board meeting on or about April 19, 2005. [Exhibit "B"].

16      14.    WNI has, despite demand therefor, failed and refused to make full payment on

17  Exhibit "D", such that the principal amount of $2,000.00 remains due and owing, plus interest at

18  9% from its inception, plus attorneys fees.

19  <center>FOURTH CLAIM FOR RELIEF – UNPAID WAGES</center>

20      15.    Within the past two years, plaintiff was employed by and rendered services for

21  and on behalf of defendant pursuant to an oral agreement for which defendant promised to pay

22  plaintiff $46,876.60 in wages which defendant has failed and refused to pay despite demand

23  therefor.

24  <center>FIFTH CLAIM FOR RELIEF</center>

25  <center>CALIFORNIA LABOR CODE 2802 FOR MONEY PAID AT DEFENDANT'S SPECIAL
INSTANCE AND REQUEST</center>

26

27      16.    Within the past two years, plaintiff expended monies, in an amount subject to

28  proof but not less than $3,511.05, for defendant's benefit and at defendant's special instance and

<center>4</center>
<center>**FOURTH AMENDED COMPLAINT**</center>

1  request for which plaintiff is entitled to be reimbursed under California Labor Code § 2802, plus

2  interest at the legal rate.

3                            SIXTH CLAIM FOR RELIEF - DEFAMATION

4       17.    At all times herein mentioned, plaintiff was, and now is, an entrepreneur and

5  businessman and resides in the County of San Mateo, State of California. Plaintiff has resided in

6  the County of San Mateo for many years and at all times has enjoyed a good reputation both

7  generally and in his/her occupation.

8       18.    On or about September 7, 2007, defendant published a letter which is attached

9  hereto as Exhibit "E" and made a part hereof.

10       19.    The following statements are false as they apply to the plaintiff:

11       a.   that plaintiff "did not cooperate, and frustrated attempts to implement [WNI's]

12  operation";

13       b.   that plaintiff was "using the Company's engineers and resources to develop a new

14  generation of systems to render the same services WNI renders to the market through a new

15  company, unrelated to WNI, to be owned by him and some new investors";

16       c.   that plaintiff "has attempted to raise obstacles to thwart the success of the Company .

17  . . [including] delaying access to the Company's corporate records and documents."

18       20.    This letter is libelous on its face. It clearly exposes plaintiff to hatred, contempt,

19  ridicule, and obloquy because it accuses plaintiff, an entrepreneur who develops start-up

20  companies and technologies with the help of investors, of misusing and usurping corporate

21  assets, and acting against the best interests of the company to the detriment of its investors.

22       21.    This letter was seen and read by persons who reside in and around the Silicon

23  Valley in California.

24       22.    As a proximate result of the above-described publication, plaintiff has suffered

25  loss of his/her reputation, shame, mortification, and hurt feelings all to his/her general damage.

26       23.    The above-described publication was published by the defendant with malice,

27  oppression and in that WNI is seeking to prevent plaintiff, who WNI has failed and refused to

28  pay the amounts it owes him, from being able to move forward with other business opportunities

1   by ruining his reputation within the investor community, and thus plaintiff seeks an award of

2   punitive damages.

3                                    PRAYER

4        Wherefore plaintiff prays for relief as follows:

5        1.     On the first claim for relief:  For damages in an amount not less than $17,000,

6   plus interest, according to proof.

7        2.     On the second claim for relief:  For damages in an amount not less than

8   $25,100.91, plus interest according to proof, and attorneys fees as provided by contract in an

9   amount according to proof.

10       3.     On the third claim for relief:  For damages in an amount not less than $2,000.00,

11  plus interest according to proof, and attorneys fees as provided by contract in an amount

12  according to proof.

13       4.     On the fourth claim for relief:  For unpaid wages in an amount not less than

14  $21,000.00, plus interest according to proof, and attorneys fees pursuant to California Labor

15  Code § 218.5.

16       5.     On the fifth claim for relief:  For general damages according to proof, for special

17  damages according to proof, and for punitive damages;

18       6.     On all claims for relief:  For costs of suit incurred herein, and for such other and

19  further relief as the court may deem proper.

20  Dated: March 4, 2008                    RYAN & STEINER

21

22                                          By:___/s/ Jeffrey F. Ryan_____
                                            Jeffrey F. Ryan
23                                          Attorneys for Counter-defendant
                                            CHARLES M. BROWN

24

25

26

27

28

# EXHIBIT A

## Wireless Networks, Inc.
### Balance Sheet
### As of December 31, 2004

|  | Dec 31, 04 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 1030 ¡ Citibank, F.S.B. | 3,926.67 |
| **Total Checking/Savings** | 3,926.67 |
| | |
| **Accounts Receivable** | |
| 1210 ¡ Accounts Receivable - WNB | 472,279.04 |
| **Total Accounts Receivable** | 472,279.04 |
| | |
| **Other Current Assets** | |
| 1120 ¡ Inventory | 687,989.65 |
| 1255 ¡ Acct Rec - Brazil Modems | 122,151.00 |
| 1260 ¡ Acct Rec - Brazil Computers | 36,101.00 |
| 1410 ¡ Notes Receivable - WNB | 923,925.88 |
| 1411 ¡ Accrued Interest Rec. - WNB | 150,084.72 |
| **Total Other Current Assets** | 1,920,252.25 |
| | |
| **Total Current Assets** | 2,396,457.96 |
| | |
| **Fixed Assets** | |
| 1500 ¡ Property & Equipment | 68,139.72 |
| 1600 ¡ Accumulated Depreciation | -61,915.00 |
| **Total Fixed Assets** | 6,224.72 |
| | |
| **Other Assets** | |
| 1900 ¡ Investments | 1,861,245.54 |
| 1930 ¡ Patents | 171,436.00 |
| 1940 ¡ Organization Cost | 0.00 |
| **Total Other Assets** | 2,032,681.54 |
| | |
| **TOTAL ASSETS** | **4,435,364.22** |

**Wireless Networks, Inc.**

**Balance Sheet**

**As of December 31, 2004**

**LIABILITIES & EQUITY**
  **Liabilities**
    **Current Liabilities**
      **Accounts Payable**

| | |
|---|---:|
| 2000 ¡ Accounts Payable | 229,218.86 |
| **Total Accounts Payable** | 229,218.86 |
| | |
| **Other Current Liabilities** | |
| 2210 ¡ Accrued Salaries Payable | 17,000.00 |
| 2230 ¡ Notes Payable | 553,486.44 |
| 2235 ¡ Accrued Interest Payable | 33,161.01 |
| 2800 ¡ Due to Shareholder | 36,203.58 |
| **Total Other Current Liabilities** | 639,851.03 |
| | |
| **Total Current Liabilities** | 869,069.89 |
| | |
| **Total Liabilities** | 869,069.89 |
| | |
| **Equity** | |
| 3000 ¡ Common Stock | 330,525.30 |
| 3200 ¡ Paid In Capital | 9,095,650.97 |
| 3900 ¡ Retained Earnings | -5,737,100.05 |
| Net Income | -122,781.89 |
| **Total Equity** | 3,566,294.33 |
| | |
| **TOTAL LIABILITIES & EQUITY** | 4,435,364.22 |

**Wireless Networks, Inc.**
**Profit & Loss**
**July through December 2004**

| | Jul - Dec 04 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| 4000 ¡ Revenue | 31,264.20 |
| 4050 ¡ Freight-In Reimbursed | 342.01 |
| 4051 ¡ Freight-Out Reimbursed | 491.70 |
| 4085 ¡ Support Fees | 2,500.00 |
| **Total Income** | 34,597.91 |
| | |
| **Cost of Goods Sold** | |
| 5000 ¡ Cost of Goods Sold | 32,807.20 |
| 5050 ¡ Freight-In Expense | 221.14 |
| 5051 ¡ Freight-Out Expense | 328.72 |
| **Total COGS** | 33,357.06 |
| | |
| **Gross Profit** | 1,240.85 |
| | |
| **Expense** | |
| 6000 ¡ Engineering and Development | 81,097.38 |
| 6010 ¡ Salaries-Gen & Admin | 36,000.00 |
| 6020 ¡ Consulting | 12,000.00 |
| 6120 ¡ Bank Service Charges | 336.86 |
| 6160 ¡ Dues and Subscriptions | 222.85 |
| 6180 ¡ Insurance | 718.76 |
| 6200 ¡ Interest Expense | 73,340.15 |
| 6210 ¡ Bus Development-Brazil | 1,136.77 |
| 6270 ¡ Professional Fees | 12,802.25 |
| 6280 ¡ Payroll Tax Expense | 5,346.50 |
| 6290 ¡ Rents | 810.00 |
| 6340 ¡ Communications | 2,412.33 |
| 6350 ¡ Business Development | 10,312.01 |
| 6550 ¡ Office Expense | 1,777.58 |
| 6570 ¡ Expense HW & SW | 157.86 |
| 6824 ¡ State - Tax | 1,387.50 |
| **Total Expense** | 239,858.80 |
| | |
| **Net Ordinary Income** | -238,617.95 |
| | |
| **Other Income/Expense** | |
| **Other Income** | |
| 7010 ¡ Interest Income | 115,417.06 |
| 7032 ¡ Debts Written Off (Contingent) | 419.00 |
| **Total Other Income** | 115,836.06 |
| | |
| **Net Other Income** | 115,836.06 |
| | |
| **Net Income** | **-122,781.89** |

**Wireless Networks, Inc.**
**Statement of Cash Flows**
**July through December 2004**

| | Jul - Dec 04 |
|---|---|
| **OPERATING ACTIVITIES** | |
| Net Income | -122,781.89 |
| Adjustments to reconcile Net Income | |
| to net cash provided by operations: | |
| 1210 ¡ Accounts Receivable - WNB | -25.00 |
| 1410 ¡ Notes Receivable - WNB | -245,390.80 |
| 1411 ¡ Accrued Interest Rec. - WNB | -115,417.06 |
| 2000 ¡ Accounts Payable | 14,125.00 |
| 2230 ¡ Notes Payable | -1,992,010.64 |
| 2235 ¡ Accrued Interest Payable | -416,675.02 |
| 2240 ¡ Option Deposit | -100,000.00 |
| 2500 ¡ Income tax payable | -835.00 |
| 2800 ¡ Due to Shareholder | 3,146.39 |
| **Net cash provided by Operating Activities** | -2,975,864.02 |
| | |
| **INVESTING ACTIVITIES** | |
| 1915 ¡ Wireless Networks Do Brazil | 45,000.00 |
| **Net cash provided by Investing Activities** | 45,000.00 |
| | |
| **FINANCING ACTIVITIES** | |
| 3000 ¡ Common Stock | 1,127.91 |
| 3200 ¡ Paid In Capital | 2,928,136.09 |
| **Net cash provided by Financing Activities** | 2,929,264.00 |
| | |
| **Net cash increase for period** | -1,600.02 |
| | |
| **Cash at beginning of period** | 5,526.69 |
| **Cash at end of period** | **3,926.67** |

# EXHIBIT B

MINUTES OF A SPECIAL MEETING OF THE BOARD OF DIRECTORS
OF
WIRELESS NETWORKS, INC.

A special meeting of the Board of Directors of Wireless Networks, Inc., a Delaware corporation, (the "Company"), was held as follows:

| | |
|---|---|
| Date: | April 19, 2005 |
| Time: | 10:45 AM Pacific Time |
| Place: | 350 Cambridge Avenue, Suite 150 |
| | Palo Alto, California. |
| Kind of Meeting: | Special |
| How Called or Noticed: | Notice waived |
| Director Present: | Mr. Charles Brown |
| Directors Absent: | None |
| Other Persons Present: | James Hagan, Esq. attorney for the |
| | Company, and Mr. Ruy Rothschild de Souza |

The following matters of business were considered and conducted.

1. Mr. Brown, as President of the Company, called the meeting to order. On motion duly made, seconded, and unanimously carried, Mr. Hagan was elected as Recording Secretary to record the minutes of this meeting.

2. Mr. Brown noted that Mr. Redett, previously a director of the Company, has resigned from that position, leaving Mr. Brown as the only director of the Company. Mr. Brown also noted that the Company has just issued to Mr. Ruy Rothschild de Souza's company, MRG International, Inc., an affiliate of Cruzamerica, 112,791.2064 shares of its common stock, a majority of the Company's outstanding common stock. Acting under and pursuant to Section 223(a)(1) of the Delaware Corporation Law, Mr. Brown elected Mr. Ruy Rothschild de Souza as a director of the Company to serve as such without compensation. Mr. Ruy Rothschild de Souza accepted the position of a director of the Company and thereafter participated in the meeting as a director. Mr. Brown observed that Mr. Brown presently serves as the President, Secretary, and Treasurer of the company. This matter was discussed. No change was made.

3. Mr. Brown presented to the meeting financial statements as of December 31, 2004, for the company and for its wholly-owned subsidiary, Wireless Networks do Brazil. These financial statements were reviewed in detail by the directors. Thereafter, on

motions duly made, seconded, and unanimously carried, each of those financial statements was approved.

4. Mr. Brown presented to the meeting two promissory notes which evidence indebtedness due from the company to him, one in the amount of $71, 892.29 and one in the amount of $2,000.00. These promissory notes were discussed and considered. Thereafter, on motions duly made, seconded, and unanimously carried, the following resolutions were adopted:

> RESOLVED, that each of the aforesaid promissory notes shall be, and each of them is hereby, approved and ratified;

> RESOLVED FURTHER, that the officers of this corporation shall be, and they are hereby, authorized, directed, and empowered to sign and deliver said promissory notes and to take any and all actions as may in their judgment be necessary or appropriate to carry out and perform said promissory notes and the foregoing resolution.

5. Mr. Brown presented to the meeting a Fourth Amendment (to August 31, 2004) and a Fifth Amendment (to December 31, 2004) to the loan and option agreement executed by and between the Company and Cruzamerica in January, 2002. These documents were reviewed and considered. Thereafter, on motions duly made, seconded, and unanimously carried, the following resolutions were adopted:

> RESOLVED, that the Fourth Amendment and the Fifth Amendment to the aforesaid loan and option agreement shall be, and each of them hereby is, approved and ratified;

> RESOLVED FURTHER, that the officers of this corporation shall be, and they are hereby, authorized, directed, and empowered to sign and deliver said Fourth Amendment and Fifth Amendment and to take any and all actions as may in their judgment be necessary or appropriate to carry out and perform said agreements and the foregoing resolution.

6. Mr. Brown presented to the meeting a promissory note due from Wireless Networks do Brazil to this company in the amount of $1,074,010.52 as of December 31, 2004. This promissory note was reviewed and considered. Thereafter, on motions duly made, seconded, and unanimously carried, the following resolution was adopted:

RESOLVED, that the aforesaid promissory note shall be, and it is hereby, approved and accepted;

7. Mr. Brown presented to the meeting a power of attorney, similar in form and content to other powers of attorney approved in the past, by means of which to authorize Mr. Ruy Rothschild de Souza to conduct the business of the Company in Brazil. This document was reviewed and considered. Thereafter on motions duly made, seconded, and unanimously carried, the following resolutions were adopted:

RESOLVED, that the aforesaid power of attorney shall be, and it is hereby, approved and ratified;

RESOLVED FURTHER, that the officers of this corporation shall be, and they are hereby, authorized, directed, and empowered to sign and deliver said power of attorney and to take any and all actions as may in their judgment be necessary or appropriate to carry out and perform said power of attorney and the foregoing resolution.

8. Mr. Hagan suggested that the Company send a letter to all shareholders informing them of the conversion by Cruzamerica of debt into common stock, the resignation of Mr. Redett as a director, and the election of Mr. Ruy Rothschild de Souza as a director. Mr. Brown and Mr. Ruy Rothschild de Souza undertook to do so.

9. Mr. Brown noted that the company was current in its tax and filings and its Delaware corporation filings.

10. Mr. Brown observed that the Company may need a small line of credit of up to $5,000 for use in the immediate future. This matter was discussed and considered. Thereafter, on motions duly made, seconded, and unanimously carried, the standard bank line of credit resolutions attached hereto were approved, ratified, and adopted, and the officers of the corporation were authorized and empowered to sign and deliver such documents, and to take such actions, as may be in their judgment necessary or appropriate to obtain such a line of credit and to carry out and implement the foregoing resolutions.

BROWN v. WIRELESS NETWORKS, INC.

11. There being no further business to come before the meeting, on motion duly made, seconded and unanimously carried, the meeting was adjourned at 11:05 A. M. Pacific Time.

Date: April 19, 2005

_James Hagan_
as Recording Secretary

# EXHIBIT C

$71,892.29

Woodside, CA
June 30, 2001

### PROMISSORY NOTE

FOR VALUE RECEIVED, Wireless Networks, Inc., a Delaware corporation ("Borrower") hereby promises to pay to the order of **Charles M. Brown** ("Lender") in lawful money of the United states of America, on **June 30, 2003**, the principal sum of **Seventy One Thousand Eight Hundred Ninety Two Dollars and Twenty Nine Cents ($71,892.29)**. This Note will bear interest at the rate of nine percent (9%) per annum until the date of maturity, and thereafter will bear interest at the rate of nine percent (9%) per annum until fully paid.

In the event that Borrower shall fail to make full and timely payment of the principal hereunder when due, the entire unpaid principal amount of this Note shall automatically become immediately due and payable without demand or notice, and Borrower shall pay such further amount as shall be sufficient to cover all costs and expenses (including reasonable attorney's fees) directly or indirectly incurred by Lender in connection with the collection of this Note.

Borrower hereby waives notice of default, notice of acceleration, notice of prepayment, presentment, protest, or notice of dishonor. Borrower may prepay at any time, in part or in full, without penalty.

**WIRELESS NETWORKS, INC.** (Borrower)

By: Charles Brown, President          By:  Secretary

# EXHIBIT D

$2,000.00

Woodside, CA
January 30, 2003

## PROMISSORY NOTE

FOR VALUE RECEIVED, **Wireless Networks, Inc.,** a Delaware corporation ("Borrower") hereby promises to pay to the order of **Charles M. Brown** ("Lender") in lawful money of the United states of America, on **January 30, 2005,** the principal sum of **Two Thousand Dollars and No Cents ($2,000,00).** This Note will bear interest at the rate of nine percent (9%) per annum until the date of maturity, and thereafter will bear interest at the rate of nine percent (9%) per annum until fully paid.

In the event that Borrower shall fail to make full and timely payment of the principal hereunder when due, the entire unpaid principal amount of this Note shall automatically become immediately due and payable without demand or notice, and Borrower shall pay such further amount as shall be sufficient to cover all costs and expenses (including reasonable attorney's fees) directly or indirectly incurred by Lender in connection with the collection of this Note.

Borrower hereby waives notice of default, notice of acceleration, notice of prepayment, presentment, protest, or notice of dishonor. Borrower may prepay at any time, in part or in full, without penalty.

**WIRELESS NETWORKS, INC. (Borrower)**

By: Charles Brown, President              By: Secretary