Lina M. Brenner (SBN 191075)
Jessica E. La Londe (SBN 235744)
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-mail:   lmbrenner@duanemorris.com
               jelalonde@duanemorris.com

Daniel J. Herling (SBN 103711)
**KELLER & HECKMAN LLP**
Three Embarcadero Center, Suite 450
San Francisco, California  94111
T:  (415) 948-2800
F:  (415) 948-2808
E-mail:  herling@khlaw.com

Attorneys for Defendant and Counterclaimant
WIRELESS NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| CHARLES M. BROWN,<br><br>             Plaintiff,<br><br>      v.<br><br>WIRELESS NETWORKS, INC., a Delaware<br>corporation,<br><br>             Defendant. | Case No. C-07-04301 EDL<br><br>**WIRELESS NETWORKS, INC.'S<br>REPLY TO PLAINTIFF'S<br>OPPOSITION TO WIRELESS<br>NETWORKS, INC.'S MOTION TO<br>DISMISS PLAINTIFF'S<br>DEFAMATION CAUSE OF ACTION** |
| WIRELESS NETWORKS, INC., a Delaware<br>corporation,<br><br>             Counter-claimant,<br><br>      v.<br><br>CHARLES M. BROWN,<br><br>             Counter-defendant. | Date:        April 15, 2008<br>Time:        9:00 a.m.<br>Dept:        Courtroom E, 15th Floor<br>Judge:       Mag. Elizabeth D. Laporte |

DMI\1315154.2

Defendant and counter-claimant Wireless Networks, Inc. ("WNI") hereby respectfully submits this Reply in support of its motion to dismiss the defamation cause of action in plaintiff and counter-defendant Charles M. Brown ("Brown")'s complaint.

## I.    INTRODUCTION

Brown's claim that WNI's letter to its shareholders is defamatory should be dismissed because it is a protected communication pursuant to the litigation privilege of California Civil Code 47(b), and Brown has failed to cite a single compelling fact or case in his opposition suggesting otherwise.

Brown's entire opposition to WNI's motion to dismiss the defamation cause of action is based on *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134.  However, despite the extensive citations to *Rothman*, Brown has failed to provide the Court with a single sentence discussing the facts of the *Rothman* case.  WNI believes that Brown has intentionally omitted a discussion of the facts because to do so would be fatal to his argument: *Rothman* is entirely distinguishable from the facts facing the Court with this motion, and, WNI respectfully suggests, should be disregarded.

Moreover, the California Court of Appeal has recently held that a communication such as the one made by WNI here is a protected communication that cannot constitute actionable defamation.  (*See Neville v. Chudacoff* (Mar. 12, 2008), 2008 Cal. App. LEXIS 356, Case No. B198253 (certified for publication).)  *Neville* is highly analogous to the instant matter and, for that reason, dictates that Brown's defamation cause of action should be dismissed.

## II.    ARGUMENT

### A.    *Rothman* is Distinguishable From the Instant Matter

Brown's opposition to WNI's motion to dismiss relies almost entirely on *Rothman*, which is entirely distinguishable from this case.  In *Rothman*, Barry K. Rothman and his firm ("Rothman") were retained by a Mr. C. and his son, a minor, to seek redress against Michael Jackson (the singer), for alleged torts against the boy.  (*Rothman*, 49 Cal.App.4th at 1138.) Rothman contacted Jackson and began to negotiate on behalf of the C. family, but did not file a lawsuit.  (*Id.*)  While negotiations were proceeding, a psychological evaluation of the boy was "leaked" by an unknown person, causing a publicity storm.  (*Id.*)

2

1     Defendants responded to the negative public exposure by calling a press conference, and

2  by making other statements to the media thereafter, in which the defendants denied the charges

3  against Jackson, but also alleged that Rothman and his clients had knowingly and intentionally

4  made false accusations against Jackson in order to extort money from him.  (*Id.* at 1139.)  The

5  *Rothman* decision notes that extortion is a crime and the charge inevitably damaged Rothman's

6  professional reputation and caused him economic damage, as he felt compelled to withdraw his

7  representation of the C. family.  (*Id.*)  Rothman filed a lawsuit against Jackson's counsel for,

8  among other causes of action, defamation.  (*Id.*)  The trial court sustained the defendants'

9  demurrer on the ground of the litigation privilege.  (*Id.*)  The Court of Appeal reversed, holding

10  that the litigation privilege did not apply in the circumstances of this case.  (*Id.* at 1138.)

11     *Rothman* is highly distinguishable from the instant matter because, in *Rothman*, the

12  allegedly defamatory statements were made in a press conference, as opposed to in a letter to a

13  limited and targeted audience, such as we have here.  Indeed, in reaching its decision, the *Rothman*

14  court was persuaded by the public nature of the statements, ultimately holding: "In sum, we hold

15  that the litigation privilege should not be extended to 'litigating in the press.'"  (*Id.* at 1149.)  By

16  sending its letter to a targeted group of people (the shareholders), WNI certainly was not

17  attempting to "litigate in the press."

18     Moreover, unlike in *Rothman*, there is more than just a "logical relation" between the

19  communication and the litigation here.  WNI sent the letter to the shareholders, almost two months

20  after the litigation commenced, to, in part, address concerns that had been expressed in certain

21  shareholders' declarations that they had submitted on behalf of Brown in this lawsuit.  Given that

22  certain shareholders had willingly done so, WNI also felt it was necessary to share with them its

23  version of the claims and allegations in the lawsuit.  Moreover, WNI also sent the letter in direct

24  response to threats that the shareholders were about to file a shareholder derivative suit.  Brown's

25  counsel informed WNI's counsel that 40 shareholders were pooling their money to prosecute the

26  action.  (*See* Declaration of Daniel Herling, ¶ 4, filed with WNI's moving papers.)  These factors

27  demonstrate more than just a "logical relation" to the litigation.

28     *Rothman* is therefore entirely distinguishable and unpersuasive here.

**B.**    ***Neville*** **is a Highly Analogous Case in Which the Court Held that the Defamation Claim Was Barred**

In a new opinion, issued March 12, 2008, the California Court of Appeal held that a writing was not defamation under very analogous facts to the instant matter.  (*See Neville v. Chudacoff* (Mar. 12, 2008), 2008 Cal. App. LEXIS 356, Case No. B198253 (certified for publication).)  In *Neville*, Neville was a former employee of M.J.K. Trading Co., which does business as Maxsecurity, Inc. ("Maxsecurity").  (*Id.* at *2.)  Maxsecurity terminated Neville's employment in December 2004, asserting that Neville, while employed by Maxsecurity, misappropriated its customer lists and secretly solicited its customers so he could start a competing business, allegedly in violation of Neville's written employment and confidentiality agreement with Maxsecurity.  (*Id.* at *2-3.)

Defendant Chudacoff was an attorney who represented Maxsecurity in connection with this dispute with Neville.  (*Id.* at *3.)  At Maxsecurity's request, Chudacoff drafted a letter addressed to Maxsecurity's customers, which Maxsecurity sent to its existing and former customers.  (*Id.*)  The letter, dated May 13, 2005, accused Neville of breach of contract and misappropriation of trade secrets and suggested to the customers that, to avoid potential involvement in any ensuing litigation "as a material witness, or otherwise," the customers should not do business with Neville.  (*Id.* at *3-4.)

In September 2005, Maxsecurity filed suit against Neville.  (*Id.* at *4.)  Neville filed a cross-complaint against Maxsecurity and Chudacoff, which included a claim for defamation arising from alleged "false accusations, representations, statements and comments."  (*Id.*)  Chudacoff moved to strike the cross-complaint pursuant to the anti-SLAPP statute, arguing that the letter was constitutionally protected petitioning activity (California Code of Civil Procedure § 425.16(e)(2), (4)).  (*Id.* at *5.)  The trial court concluded that the letter was related to the dispute between Maxsecurity and Neville, and was therefore petitioning activity protected by the anti-SLAPP statute.  (*Id.*)  Neville appealed on the ground that Chudacoff failed to meet his burden of proving that the letter was written "in connection with an issue under consideration or review by a legislative, executive, or judicial body" as required by section 426.16(e)(2).  (*Id.* at *8-9.)  The

1    appellate court identified the issue on appeal as: "whether the letter is a writing 'made in

2    connection with' the anticipated litigation between Maxsecurity and Neville." (*Id.* at *12.)

3         The appellate court's decision recognized that the standards under CCP section

4    426.16(e)(2) (the anti-SLAPP statute) are not identical to those under California Civil Code

5    section 47(b) (the litigation privilege). (*Id.* at *9.) However, it noted that "courts 'look[] to the

6    litigation privilege [Civ. Code § 47] as an aid in construing the scope of section 425.16,

7    subdivision [(e)(2)] with respect to the first step of the two-step anti-SLAPP inquiry . . . ." (*Id.* at

8    *10 (citing *Flatley v. Mauro* (2006) 39 Cal.4th 299, 323).)

9         After analyzing California case law, the Court of Appeal concluded that a statement is "in

10   connection with" the litigation pursuant to California Code of Civil Procedure section 425.16(e)(2)

11   "if it relates to the substantive issues in the litigation and is directed to persons having some

12   interest in the litigation." (*Id.* at *18.) The court stated that "cases construing the scope of the

13   litigation privilege embodied in Civil Code section 47 have reached similar results," noting that

14   "[t]he reasonable relevancy requirement of section 47 is analogous to the 'in connection with'

15   standard of section 425.16, subdivision (e)(2)." (*Id.* at *19.)

16        The court held that the letter was a protected communication and did not constitute

17   defamation:

18       The Letter related directly to Maxsecurity's claims for breach of contract and
     misappropriation of trade secrets against Neville. . . . The Letter was directed to
19   Maxsecurity's current and former customers-persons whom Maxsecurity
     reasonably could believe had an interest in the dispute as potential witnesses to, or
20   unwitting participants in, Neville's alleged misconduct. The Letter constituted an
     attempt to prevent further misuse of Maxsecurity's proprietary information, and
21   thereby mitigate Maxsecurity's potential damage. . . . [T]he Letter contained no
     statements of fact concerning Neville that were not based on or related to the
22   allegations that formed the basis of Maxsecurity's claims. Thus, the Letter was "in
     connection with" the issues in Maxsecurity's lawsuit against Neville.
23

24

25        The facts here are highly analogous to those in *Neville*, and, indeed, are even stronger.

26   Here, as in *Neville*, the letter "related directly" to the subject matter of the lawsuit. In addition, the

27   letter was sent to a targeted group of people (the shareholders) whom WNI "reasonably could

28   believe had an interest in the dispute as potential witnesses to" the lawsuit, as well as being

impacted by any judgment in the action by virtue of their status as shareholders.  Indeed, not only could WNI reasonably have believed the shareholders had an interest in the dispute as potential witnesses and financial stakeholders in the result, several shareholders had made themselves part of the litigation by voluntarily submitting declarations on Brown's behalf in support of various efforts to attach WNI's source code.  Also, as discussed in WNI's moving papers, Brown had specifically threatened that a shareholder suit would be filed, thus making it a real possibility that litigation would be initiated by the shareholders to which WNI sent its letter.  Moreover, unlike *Neville*, litigation here had already been commenced at the time that WNI sent the letter.

Thus, it is clear that WNI's letter is related to the litigation and, given similar facts, California courts readily find that the communication does not amount to defamation.

## III.    CONCLUSION

For the reasons discussed above, WNI respectfully requests that Brown's defamation cause of action be dismissed with prejudice.


Dated:  April 1, 2008                              DUANE MORRIS LLP



                                                   By:  ___/s/ Jessica E. La Londe_____
                                                        Lina M. Brenner
                                                        Jessica E. La Londe
                                                        Attorneys for Defendant and Counterclaimant
                                                        WIRELESS NETWORKS, INC.

WNI'S REPLY TO PLAINTIFF'S OPPOSITION TO WNI'S MOTION                    CASE NO. 07-4301 EDL
TO DISMISS PLAINTIFF'S DEFAMATION CAUSE OF ACTION