Lina M. Brenner (SBN 191075)
Jessica E. La Londe (SBN 235744)
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-mail:   lmbrenner@duanemorris.com
          jelalonde@duanemorris.com

Daniel J. Herling
Keller & Heckman LLP
50 California Street, Suite 1500
San Francisco, California  94111
T:  (415) 277-5965
F:  (415) 277-5945
E-mail:  herling@khlaw.com

Attorneys for Defendant
WIRELESS NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| CHARLES M. BROWN,<br><br>          Plaintiff,<br><br>     v.<br><br>WIRELESS NETWORKS, INC., a Delaware corporation,<br><br>          Defendant. | Case No. C-07-04301 EDL<br><br>**DECLARATION OF LINA M. BRENNER IN SUPPORT OF DEFENDANT WIRELESS NETWORKS, INC.'S *EX PARTE* APPLICATION SEEKING ORDER SHORTENING TIME IN WHICH TO BRIEF AND HEAR MOTION TO COMPEL TRANSFER OF DOMAIN NAME WIRELESS-NETWORKS.COM**<br><br>Dept:     Courtroom E, 15th Floor<br>Judge:    Mag. Elizabeth D. Laporte |

| | |
|---|---|
| 1 | WIRELESS NETWORKS, INC., a Delaware corporation, |
| 2 | |
| 3 | Counter-claimant, |
| 4 | v. |
| 5 | CHARLES M. BROWN, |
| 6 | |
| 7 | Counter-defendants. |

I, Lina M. Brenner, declare as follows:

1. I am an attorney licensed to practice law in the State of California, and a partner with the law firm of Duane Morris LLP ("Duane Morris"), counsel of record for Defendant and Counter-claimant Wireless Networks, Inc. ("WNI"). I have personal knowledge concerning the information herein, and can testify to same if necessary.

2. A review of the registration information for the domain name Wireless-Networks.com (the "WNI domain name"), which is located at http://www.networksolutions.com/whois/results.jsp?domain=wireless-networks.com, shows that the WNI domain name is registered to Charles Brown, the Plaintiff in this case, and not the company WNI, at which Brown was an officer and director until his resignation on or about July 13, 2007. Upon information and belief, and based on the historic information at the Network Solutions (the registrant's) website, the WNI domain name has been registered in Brown's name since its inception, on or about August 2, 1997. A true and correct copy of the registration information is contained at page 30 of Exhibit A hereto.

3. On or about Thursday, June 12, 2008, WNI reviewed its registration information for the WNI domain name, and noted that the WNI domain name was still registered to Charles Brown. I called Network Solutions and asked what should be done to transfer the WNI domain. I was instructed to provide a letter to their legal department, explaining that Brown had nothing to do with the company any longer, was not in a position of authority to manage or otherwise control/be the contact for the website and that WNI wanted everything changed to reflect WNI as

2

the proper registrant. I emailed this letter immediately. In response, on Friday, June 13, 2008, I received the communication at Exhibit A, pages 1-2. This communication dictated that WNI needed a court order to effectuate the transfer we sought.

4. That same day, June 13, 2008, I noted that the registration, the contact for which had been listed as Charles Brown, at brown@wirelessnetworks.com (Mr. Brown's WNI email address, to which technically he should have no more access at all), had been changed right after I contacted Network Solutions. Charles Brown's new contact information was listed as cbrown@flyingcircuit.com, a reference to, upon information and belief, Brown's personal company.

5. I questioned Network Solutions about the recent activity on the domain name account, and they responded, as shown in Exhibit A, page 3, that there was now a "litigation hold" on the account. At that point, I wrote a letter to Brown's counsel, Jeff Ryan, seeking actions on Brown's part to transfer the WNI domain name registration back to WNI. Exhibit A, pages 4-5 is a true and correct copy of the letter I wrote and sent to Ryan, by email and facsimile, on June 16, 2008.

6. On Monday, June 16, 2008, Jeff Ryan responded to me, advising that a letter from him, of February 5, 2008, had contained the information WNI had needed to transfer registration of the WNI domain name to WNI. The June 16, 2008 correspondence and the February 5, 2008 correspondence is attached hereto as Exhibit A, at pages 8-9. Paragraph 4 of the February 5, 2008 letter purported to provide the requisite information for transfer of the registration of the WNI domain name. At the time this information was provided, there were numerous matters in dispute (as shown in the letter) concerning Brown's retention of WNI property. WNI concentrated on resolving the disputes concerning its documents, source code, accounting records and other materials it believed were in the possession of Brown. As a result, at that time, WNI did not contact Network Solutions with regard to transfer of the registration of the WNI domain name.

7. I replied to Mr. Ryan on June 17th, 2008, advising that regardless of the content in the February 2008 communications, we could not now effectuate the necessary transfer without Brown's assistance. Exhibit A, page 9A is a true and correct copy of such email.

8. In response, as shown in Exhibit A at pages 10-13, Mr. Ryan wrote me a letter, in which he explained that the other WNI domain names (wireless-networks.us and wireless-networks.net) could be transferred, and that it was allegedly WNI's fault that it had not effectuated the registration transfer for the WNI .com domain name in February of 2008 because (1) WNI had not acted quickly enough in February of 2008 to transfer the registration rights (Network Solutions offered only a 14-day transfer window to do so) and (2) there was a litigation hold on the .com WNI domain name due to our recent communications with Network Solutions concerning the domain name.

9. Any litigation hold, as well as the lack of transfer activity in February of 2008 (given the numerous other disputes between the parties at that time), is both inadvertent and irrelevant to the current problem. Specifically, given Mr. Ryan's acknowledgment that Brown had been, and was now, more than willing to transfer the domain name registration, I spoke to Network Solutions, who assured me that all Brown would have to do is agree to lift the "litigation hold" and we could go ahead and effectuate the transfer as desired. I quickly agreed to such lift of the litigation hold myself, and asked Mr. Ryan to do the same thing.

10. At the same time, I also contacted Network Solutions about transfer of the .us and .net wireless-networks domain names . Exhibit A at page 16 reflects my correspondence with Network Solutions confirming Brown's agreement to lift the litigation hold, and my activity concerning the other domain names.

11. Thereafter, I provided Mr. Ryan with all information he would need to complete, on Brown's behalf, effectuating the transfer of all the domain names related to WNI. Exhibit A, pages 17-24, are true and correct communications of June 18 and June 19, 2008 emails and a form I sent Mr. Ryan, seeking his assistance with regard to getting all the Wireless-Networks domain name registrations transferred. Page 22A to Exhibit A is a true and correct copy reflecting my own immediate agreement to lift the litigation hold. I also called Mr. Ryan's office twice, and was told he was in depositions all day but would get back to me.

///

///

4

12. Finally, on June 19, 2008 in the afternoon, Mr. Ryan responded simply "I have done everything you have requested of me now if you would not mind stop bothering me I have much more important matters to attend to." Exhibit A, pages 23-24.

13. On Thursday, June 19, 2008, I again explained to Mr. Ryan that all I needed was acknowledgment that the litigation hold had been lifted, and that the necessary authorization codes (without which no transfer can be effectuated) would be provided. Instead, I once again was told simply "Please stop bothering me." Exhibit A, page 24.

14. Finally, on Friday June 20, 2008, I called Network Solutions, trying to find out whether perhaps Mr. Ryan had lifted the litigation hold but not advised me of same. I was advised that they were still waiting to hear from Mr. Ryan/Brown. Exhibit A, page 26. I again asked Mr. Ryan to lift the litigation hold but was met with complete silence. Exhibit A, page 27.

15. At this juncture, WNI has absolutely no choice but to seek relief from the Court. WNI counsel has made every attempt, on behalf of WNI, to informally transfer the registration of the WNI domain name back to WNI. I was initially hopeful, given Mr. Ryan's acknowledgment that Brown had always been willing to effectuate the transfer, that this would be a routine administrative matter. Indeed, it became clear that as soon as Brown cooperated, it was very easy to transfer the domain names. For example, I managed to transfer the .net name in one afternoon, once I received the authorization from Brown to do so. However, with regard to the .com domain name (the most important one), on the cusp of effectuating the transfer and lifting the inadvertent "litigation hold," Mr. Ryan simply stopped cooperating and has not communicated with me since.

16. The registration for the .com name expires August 1, 2008, and therefore immediate action on transferring the registration is imperative. WNI has learned that there are potential clients who are confused by their inability to access the Wireless-Networks.com website. WNI would like access to its own website, modify it and cater to its customer base from it. The inability to do the above is, upon information and belief, having a negative impact on WNI's business.

17. Based on all the above, WNI respectfully requests that the Court (1) either enter an order for the shortened briefing schedule reflected in the proposed order submitted herewith or (2)

5

1  in the Court's discretion pursuant to Local Rule 6-3(b), schedule an immediate hearing at which
2  the parties can both appear and resolve this matter without further need of pleadings.  WNI regrets
3  wasting the resources of the Court and the parties with regard to such a request, but it has no
4  choice in the matter if it wishes to recover a vital corporate interest – the registration of its domain
5  name "wireless-networks.com."
6      I declare under penalty of perjury under the laws of the United States of America that the
7  foregoing is true and correct.
8      Executed on June 24, 2008, at San Francisco, California.

By:   /s/ Lina M. Brenner
      Lina M. Brenner

6