UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES M. BROWN,

    Plaintiff,                                No. C 07-4301 EDL

    v.                                      ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY ADJUDICATION

WIRELESS NETWORKS, INC.,

    Defendant.

_____/

    Now before the court is Defendant's Motion for Partial Summary Adjudication of Plaintiff's Defamation Claim. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, the Court hereby grants Defendant's motion for the following reasons.

**Relevant facts**

    On September 7, 2007, almost two months after Plaintiff filed this lawsuit, Defendant, through its Chairman Ruy Rothschild de Souza, sent a letter to shareholders regarding this litigation. See Declaration of Ruy Rothschild de Souza at Ex. A. The letter outlines some of Plaintiff's actions before filing suit and while he was employed with Defendant. The letter notes that in addition to claiming money damages in this lawsuit, Plaintiff requested that the Court attach Defendant's source code and refuse access to Defendant, and that Plaintiff's "tactics are costing the Company time and money." Id. The letter notes that "[w]e intend to vigorously defend against the litigation commenced by Mr. Brown" and instructs shareholders to direct questions regarding to legal action to Mr. de Souza, and that the lawyers will respond to the questions. Id.

1   Plaintiff filed an amended complaint on November 16, 2007, adding a claim for defamation
2   based on Mr. de Souza's September 7, 2007 letter. Specifically, the complaint alleges that the
3   following statements from the letter were defamatory:

    a. that plaintiff "did not cooperate, and frustrated attempts to implement the operation."
    b. that plaintiff was "using the Company's engineers and resources to develop a new generation of systems to render the same services WNI renders to the market through a new company, unrelated to WNI, to be owned by him and some new investors"
    c. that plaintiff "has attempted to raise obstacles to thwart the success of the Company. . . . [including] delaying access to the Company's corporate records and documents."

See Nov. 16, 2007 Amended Compl. at ¶ 19.

**Discussion**

Defamation is "the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." Ringler Assocs. v. Maryland Cas. Co., 80 Cal.App.4th 1165, 1179 (2000) ("Publication, which may be written or oral, is defined as a communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made. Publication need not be to the public or a large group; communication to a single individual is sufficient."). "It is an essential element of defamation that the publication be of a false statement of fact rather than opinion." Id. "In all cases of alleged defamation, whether libel or slander, the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose." Id. ("It is sufficient if the substance of the charge is proven true, irrespective of slight inaccuracy in the details, 'so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark.'") (internal citations omitted).

Defendant argues that even if Mr. de Souza's statements in the September 7, 2007 letter were defamatory, the statements were made to persons with common interest and without malice, which bars Brown's defamation claim. The common interest privilege states that a privileged communication is one made:

    In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.

2

Cal. Civ. Code § 47(c). Application of the common interest privilege involves a two-step inquiry:

> The first question is whether the factual predicate for the privilege was present-whether, in traditional terms, the " 'occasion' " was " 'privileged.' " (Taus v. Loftus (2007) 40 Cal.4th 683, 721, 54 Cal.Rptr.3d 775, 151 P.3d 1185.) At trial the defendant bears the burden of proof on this question. ( Ibid.) If he succeeds, the burden shifts to the plaintiff to show that the statement was made with malice. ( Ibid.) On summary judgment, of course, the defendant bears the burden of showing in the first instance that there is no triable issue of fact as to either issue-that the statement was made on a privileged occasion, and that it was made "without malice."

Mamou v. Trendwest Resorts, Inc., 165 Cal.App.4th 686, 729 (2008).

Plaintiff argues that there is a triable issue of fact as to whether Mr. de Souza's statements were made with malice:

> For purposes of a statutory qualified privilege, "[t]he malice referred to ... is actual malice or malice in fact, that is, a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person. [Citation.] The factual issue is whether the publication was so motivated. 'Thus the privilege is lost if the publication is motivated by hatred or ill will toward plaintiff [citations], or by any cause other than the desire to protect the interest for the protection of which the privilege is given' [citations]."

Mamou, 165 Cal.App.4th at 729; see also Noel v. River Hills Wilsons, Inc,, 113 Cal.App.4th 1363, 1370-72 (2003) ("Insofar as the common-interest privilege is concerned, malice is not inferred from the communication itself. The malice necessary to defeat a qualified privilege is "actual malice" which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights (citations).") (internal citations omitted). Plaintiff argues that there is evidence of both types of malice here.

First, Plaintiff argues that traditional hatred or ill will has been shown because Mr. de Souza retaliated against Plaintiff. See 5 Witkin, Summary of California Law, Torts, § 593 at p. 869 (2005 ed.) ("Malice must be ill will beyond the normal feeling toward a wrongdoer, i.e., a motive different from that which makes the communication privileged."). However, the September 2007 letter was sent *after* Plaintiff resigned, which does not support retaliation since Plaintiff was no longer employed. Plaintiff also points to his own attempts to attach the source code and his participation as a deponent in litigation regarding attorney's fees between Defendant's former counsel and Defendant as showing hatred or ill will by Mr. de Souza. Plaintiff is the one, however, who engaged in this conduct, so it sheds no light on Mr. de Souza's motivation.

3

1          Second, Plaintiff argues that the letter was motivated by "any cause other than the desire to
2  protect the interest for the protection of which the privilege is given." Mamou, 165 Cal.App.4th at
3  729. As evidence of this motivation, Plaintiff points to this Court's prior ruling on Defendant's
4  Motion to Dismiss in which the Court stated that: "The letter itself does not request, for example,
5  shareholders to act as witnesses in the case," and "It is also not clearly an attempt to mitigate
6  potential damage in the litigation, as it does not instruct the shareholders not to talk with Brown or
7  help him with his litigation." See April 24, 2008 Order at 6-7. The Court's prior order, however,
8  addressed the litigation privilege, not the common interest privilege, and, of course, does not
9  constitute evidence that can create a triable issue of fact as to whether Mr. de Souza acted with
10 malice.

11         Finally, Plaintiff argues that malice can be inferred because Mr. de Souza did not have
12 reasonable grounds for believing that his statements were true. See Noel, 113 Cal.App.4th at 1370;
13 see also Cuenca v. Safeway San Francisco Employees Fed. Credit Union, 180 Cal.App.3d 985, 998-
14 1000 (1986) (affirming trial court's ruling that Civil Code § 47 privilege applied based on the
15 plaintiff's failure to raise a triable issue of fact, based also on declaration from author of statement
16 disavowing any malicious intent). However, "'[m]ere negligence in inquiry cannot constitute lack
17 of reasonable or probable cause.'" Id. (quoting Rollenhagen v. City of Orange 116 Cal.APp.3d 414,
18 423 (1981)). Further, "'[i]t is only when the negligence amounts to a reckless or wanton disregard
19 for or avoidance of accuracy, that malice is shown.'" Id. (quoting Roemer v. Retail Credit Co., 3
20 Cal.App.3d 368, 371-72 (1970)). Significantly, malice may not be inferred merely from the
21 communication. See Lundquist v. Reusser, 7 Cal.4th 1193, 1205 (1994) (". . . malice is not inferred
22 from the communication.") (citing Cal. Civil Code § 48); see also 5 Witkin, Summary of California
23 Law, § 593 at p. 870 (2005 ed.) ("Malice cannot be inferred from a mere communication by one
24 person to another, where it does not appear on the face of the communication. But actual malice
25 may be established either by direct proof of the defendant's state of mind, or by circumstantial
26 evidence from which the jury might infer it as a fact.") (internal citations omitted).

27         Here, Plaintiff has not raised a triable issue of fact as to Mr. de Souza's reasonable belief in
28 the truth of his statements. Mr. de Souza testified in his declaration that the letter reflected his
knowledge "of various acts undertaken by Brown, that [he] believed in good faith had detrimentally

4

or otherwise affected WNI, and were relevant to the present litigation." de Souza Decl. ¶ 7. He also stated that he wrote the letter pursuant to his duty as the Chairman of the Board. See id. He stated that he had no malicious intent in sending the latter, and was not reckless with regard to the truth. See id. at ¶ 9. He stated that he was reporting what he learned about Plaintiff's actions and how that knowledge affected Mr. de Souza's actions. See id. He stated that the communication was for the common interest of the recipients and that the statements were truthful. See id. ¶ 9-10. Mr. de Souza's statement evidence a reasonable belief in the truth of his statements in the September 2007 letter and that the letter was sent for a business purpose, and Plaintiff has provided no evidence to the contrary.

Moreover, the showing of malice here is dramatically different from the malice shown in Mamou, the case on which Plaintiff principally relies. In Mamou, the court noted that the plaintiff was referred to as a "raghead" and part of the "Syrian regime," that an employee said he was going to "get" or "get even" with the plaintiff, that managers instructed employees to shun the plaintiff, and that an employee called the plaintiff a thief lacking integrity or ethics. See Mamou, 165 Cal.App.4th at 729-731. This evidence raised a triable issue of fact as to malice. By contrast, here, such evidence is lacking.

**Objection to e-mail evidence**

Plaintiff objects to the admissibility of e-mails contained in the Declaration of Jessica La Londe at exhibit E as lacking authenticity. First, Plaintiff does not dispute the authenticity of any e-mails there were sent by Plaintiff. Second, the remaining e-mails are authenticated because of their distinctive characteristics. See FRE 901(b)(4) (authentication by "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."); see also, e.g., United States v. Safavian, 435 F. Supp. 2d 36, 40 (D. D.C. 2006) ("The e-mails in question have many distinctive characteristics, including the actual e-mail addresses containing the "@" symbol, widely known to be part of an e-mail address, and certainly a distinctive mark that identifies the document in question as an e-mail. In addition, most of the e-mail addresses themselves contain the name of the person connected to the address, such as "abramoffj@gtlaw.com," "David.Safavian@ mail.house.gov," or "david.safavian @gsa.gov." See, e.g., Exhibits 101, 105, 106. Frequently these e-mails contain the name of the sender or recipient in

the bodies of the e-mail, in the signature blocks at the end of the e-mail, in the "To:" and "From:" headings, and by signature of the sender. The contents of the e-mails also authenticate them as being from the purported sender and to the purported recipient, containing as they do discussions of various identifiable matters, such as Mr. Safavian's work at the General Services Administration ("GSA"), Mr. Abramoff' s work as a lobbyist, Mr. Abramoff' s restaurant, Signatures, and various other personal and professional matters.") (internal citations omitted).  Plaintiff's objection based on authenticity is overruled.

**Conclusion**

Accordingly, even assuming that the statements were defamatory, an issue that the Court need not reach, the statements come within the common interest privilege.  Plaintiff has not raised a triable issue of fact with respect to the showing required for malice.  Therefore, Defendant's Motion for Partial Summary Adjudication is granted.  In addition, as stated at the hearing, the expert discovery cutoff date is extended to December 24, 2008.

**IT IS SO ORDERED.**

Dated: November 17, 2008

　　　　　　　　　　　　　　　　　　　*Elizabeth D. Laporte*
　　　　　　　　　　　　　　　　　　　ELIZABETH D. LAPORTE
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge